# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

LAURA J. MAKRAY,                                  )
12617 Brunswick Drive                             )
Bowie, MD 20715,                                  )
                                                  )
Plaintiff,                                        )
                                                  )
        v.                          )          Case No.: 1-12-cv-00520 (BAH)
                                                  )
THOMAS  E. PEREZ                                  )
Secretary of Labor                                )
200 Constitution Avenue, N.W.,                    )
Washington, DC 20210                              )
                                                  )
Defendant.                                        )
_____          )

## JOINT PRETRIAL STATEMENT

### Joint Statement of the Case Suitable for Reading to the Jury

The plaintiff in this action is Laura Makray, the Assistant Director of the Office of National

Talent Pool and Training in the Office of Audit of the Office of Inspector General of the

Department of Labor.  Ms. Makray has brought this action claiming that she was passed over for

promotion to the position of Director of the Office of Quality Assurance in January of 2011

because she is a woman.  Ms. Makray has brought this suit under Title VII of the Civil Rights Act,

a federal statute that prohibits discrimination by all employers including the federal government.

The actions at issue in this case were taken by officials of the Office of Audit, although the nominal

defendant is the Secretary of Labor.  They respond that Melvin Reid, a man, was selected as

Director of the Office of Audit instead of Ms. Makray for legitimate reasons and without

discriminating against Ms. Makray.  It is my function as the Court to decide all questions of law.

It will be your function as the jury to decide all questions of disputed facts and to render a verdict.

If you decide for Ms. Makray, you will also award her damages.  If you decide for defendant, then

you will not award her any damages.

Plaintiff's Statement of Claims

Laura Makray, the plaintiff in this action, is the Assistant Director of the Office of National

Talent Pool & Training in the Office of Audit ("OA") of the Office of Inspector General ("OIG")

in the U.S. Department of Labor.[1]  Ms. Makray, who is presently a GS-14, applied for the GS-15

position of Director of the OA Office of Quality Assurance ("OAQA") when it was posted for

competition in December of 2011.  The Director of OAQA is one of three positions at the Office

Director level in the Office of Audit National Office in Washington, D.C.  In January of 2011,

defendant selected Melvin Reid, a man, as Director of OAQA.  OAQA is responsible for the Office

of Audit Quality Assurance program and, among its other functions, performs quality reviews of

all audits before they are issued by the Assistant Inspector General for Audit and other senior

officials of the Office of Audit.  OAQA also conducts peer reviews of other federal agencies'

Inspectors Generals' Offices.

The audit activities of the Office of Audit are headed by the Assistant Inspector General

for Audit ("AIGA"), who at all times relevant was Elliot Lewis.  The operational functions of OA

are largely the overall responsibility of the Deputy Assistant Inspector General for Audit

---

[1]      The Office of Audit, among its activities, conducts performance audits to review the
effectiveness, efficiency, economy and integrity of all DOL programs and operations, including
those performed by contractors, grantees, and program offices within DOL.  It also conducts peer
reviews of other agencies' Inspector General's Offices.  Activities of the Office of Audit are
governed by the policies and procedures specified in the OA Policies and Procedures Handbook,
Manual; the Generally Accepted Government Auditing Standards ("GAGAS" or "the Yellow
Book"); and other auditing and accounting publications.

("DAIGA"), who at all times relevant until November of 2011, was Michael Raponi.  OIG is headed by the Inspector General, at all times relevant Daniel Petrole on an acting basis, and the Deputy Inspector General, which was Mr. Petrole's permanent position.

The Complaint alleges that defendant discriminated against Ms. Makray because she is a woman when it selected Mr. Reid as Director of OAQA instead of her, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq.  Jurisdiction of the Court is based upon 28 U.S.C. §1332; and 42 U.S.C. §2000-16(c) (incorporating by reference 42 U.S.C. §2000e-5(c)).  Venue lies in this judicial district pursuant to 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000-5(f)(3)).  The relief Ms. Makray is seeking is a.) promotion to Director of OAQA at the GS-15 level retroactive to January of 2011, when Ms. Reid was selected; b.) placement into that position or one equivalent to it; c.) backpay and commensurate benefits; d.) compensatory damages; and e.) an award of the attorneys' fees and costs incurred in the prosecution of this action.

**Defendant 's Statement of the Case**

The Plaintiff, Laura Makray, filed a formal complaint of discrimination in 2011 based on Race (Caucasian) and Sex (Female) her January 2011 non-selection for the position of Director (GS-15) of the Office of Audit Quality Assurance (OAQA).  Following an investigation of her claims, Plaintiff elected to receive a Final Agency Decision.  On April 6, 2012, the Deputy Secretary of the Department of Labor issued a decision finding that the Office of Inspector General (OIG) had not discriminated against Ms. Makray based on her race and/or sex when it did not select her for the position of Director of OAQA.

In accordance with federal hiring guidelines and policies, as well as the agency's own standard procedures, in December 2010 the agency advertised the OAQA Director position using

a vacancy announcement on the website "USA Jobs."  Plaintiff applied for the position and was determined to be among the best qualified candidates, as was the person ultimately selected, Mr. Marvin Reid.  Michael Raponi, the Deputy Assistant Inspector General of Audit, was the selecting official for this position.  Mr. Raponi put together an interview panel that included himself, Michael Yarbrough, a GS-15 manager in the Atlanta Regional Office of Audit, and Robert Dixon, a GS-15 Manager with the OIG's Office of Investigations in Washington, D.C.

The OIG's standard practice is to award an interview to all internal applicants who are determined to be among the best qualified candidates for a position.  In this case, there were three OIG applicants who made the best qualified list, and all three were interviewed.  The panel held the interviews on January 12, 2011, and used a structured interview process, as was OIG's established practice.  Pursuant to that process, each candidate is asked the same questions, in the same order, by the same panel member.  In the end, the scores were close, but Mr. Reid received the highest consensus score from the interview panel.  The panel then recommended to Elliot Lewis, the Assistant Inspector General of Audit, that Mr. Reid be selected to fill the OAQA Director position.  Mr. Lewis thereafter concurred with the panel's recommendation.

Ms. Makray now alleges that the agency failed to use proper policies and procedures throughout the selection process, and that because in her view she was the best qualified candidate for the position, the only reason she was not selected must have been because she is female.  In response, Messrs. Raponi, Yarbrough and Dixon have each articulated legitimate, non-discriminatory reasons for making their selection decision, namely that they collectively considered Mr. Reid to be the best qualified candidate for the position.  Each further will testify that he did not intend to discriminate against Ms. Makray because she is a woman.  In sum,

although she is clearly disappointed in not being selected, Ms. Makray cannot establish that by

not selecting her the agency intended to discriminate against her because she is a woman.

## Plaintiff's Witnesses

Laura J. Makray
C/o Seldon Bofinger & Associates, P.C.
1319 F Street, NW, Suite 200
Washington, DC 20004
(202) 393-8200

Ms. Makray is the plaintiff in this action and was and still is employed by the Headquarters

Office of the DOL OIG Office of Audit as the Assistant Director in the Office of National Talent

Pool and Training.  Ms. Makray will testify about all facets of liability and damages in this case

including, but not limited to:  her background, superior performance and career progression as an

auditor and in the field of quality assurance and as a GS-14 Assistant Director; the organization

and work of the Office of Audit, and in particular the office of Audit Quality Assurance; the

Vacancy Announcement for the Director (GS-15) of OAQA and her application for the position;

the interview and selection process for that position; the superiority of her qualifications for the

position; defendant's history of discriminatory treatment of her, including the multiple other

instances of its failure to promote her and/or other women; and defendant's history of

discriminatory treatment of other women.  Ms. Makray will also testify about her claim for

compensatory damages including, but not limited to, the anxiety and emotional distress she

suffered as a result of defendant's discrimination, and the interference with her personal life and

professional goals and advancement caused by defendant.

The estimated time for Ms. Makray's direct testimony is 3 hours.  She will be called as a

witness by plaintiff.

Barbara Warren
C/o Seldon Bofinger & Associates, P.C.
1319 F Street, NW, Suite 200
Washington, DC 20004
(202) 393-8200

Ms. Warren was the GS-15 Audit Director in the Office of Audit's headquarters office in

Washington, D.C., until she retired in March of 2008.  Ms. Warren will testify about defendant's

discriminatory treatment of her including, but not limited to, Deputy Assistant Inspector General

Michael Raponi's interference with her authority and duties as a supervisor; his unfounded

accusations that she had abused sick leave; defendant's issuance of negative performance

appraisals of her work and placement of her on a performance improvement plan that were

unprecedented in her nearly thirty-year career; and her decision to retire early to her financial

detriment in order to escape defendant's discriminatory treatment of her.

The estimated time for Ms. Warren's direct testimony is 1 hour.  She will be called as a

witness by plaintiff.

Katherine Gers
C/o Seldon Bofinger & Associates, P.C.
1319 F Street, NW, Suite 200
Washington, DC 20004
(202) 393-8200

Ms. Gers is currently on active duty for the United States Army, mobilized as an

Information Operations Officer.  Her civilian position is as a GS-14 Audit Manager at DOL OIG.

Prior to joining DOL, her civilian position was with VA OIG, where she worked alongside Melvin

Reid for approximately ten years, initially as a staff auditor and  as a GS-14 Audit/Project Manager,

and then as an Audit Manager in for defendant's Office of Audit where she has oversight over

contractors.  Ms. Gers will testify that VA OIG, during the time she, Mr. Reid, and Mr. Raponi

were there, did not have a dedicated Quality Assurance Office until shortly before Mr. Reid's

departure; about the internal review process VA OIG had in place during that time; and Mr. Reid's specific experience and performance at VA OIG.  She will also testify about her experience working with Ms. Makray at DOL OIG, in particular her exceptional expertise in quality assurance and related matters, and the inferiority of Mr. Reid's expertise in these areas.[2]

The estimated time for Ms. Gers' direct testimony is 30 minutes.  She will be called as a witness by plaintiff.

Mary Stepney
C/o Seldon Bofinger & Associates, P.C.
1319 F Street, NW, Suite 200
Washington, DC 20004
(202) 393-8200

Mary Stepney is a GS-14 Audit Manager in the Dallas Regional Office of the Office of Audit  Ms. Stepney will testify about the discriminatory treatment she faced from Mr. Raponi and Mr. Yarbrough including, but not limited to, the manner in which Mr. Yarbrough carried out unlawful personnel actions prohibited by Office of Audit HR policies desired by Mr. Raponi, which led to their rescission of the Highly Effective close-out rating she received from her former supervisor for the first nine months of FY 2009; and the unsigned Unsatisfactory and Minimally Satisfactory ratings they issued after it.   Ms. Stepney also will testify about Mr. Raponi's emphasis on the importance of leadership for GS-14's and about Mr. Raponi's dismissive view of the Office of Audit after Ms. Makray was reassigned out of it and while Mr. Reid was a part of it.

The estimated time for Ms. Stepney's direct testimony is 20 minutes.  She will be called as a witness by plaintiff.

Richard Woodford
C/o Office of the U.S. Attorney for the District of Columbia
Civil Division
501 3rd Street, NW

---

2       If defendant calls Mr. Reid as a witness, Ms. Gers will also testify about his poor performance as Director of OAQA.

Washington, D.C. 20350

Mr. Woodford is the GS-15 Director of OA's Office of National Talent Pool and Training and is plaintiff's current supervisor.  Mr. Woodford will testify about plaintiff's skill, knowledge, and experience in quality assurance, as opposed to Mr. Reid's inferior skills, knowledge, and experience in the same field, and about his involvement in the OAQA Director selection process, relating to his role in drafting the interview questions.[3]

The estimated time for Mr. Woodford's direct testimony is 20 minutes.  He will be called as a witness by plaintiff.

Joseph Donovan
C/o Seldon Bofinger & Associates, P.C.
1319 F Street, NW, Suite 200
Washington, DC 20004
(202) 393-8200

Mr. Donovan is the GS-15 Audit Director of Financial Statement Audits for the Office of Audit.  Mr. Donovan will testify about plaintiff's skill, knowledge, and experience in quality assurance; about the technical skills and expertise required to work in the field of audit quality assurance; his own and other audit directors' criticism of Mr. Reid's work prior to his selection for OAQA Director; and of his knowledge about the selection process for the OAQA Director position.

The estimated time for Mr. Donovan's testimony is 20 minutes.  He will be called as a witness by plaintiff.[4]

Christine Allen
C/o Seldon Bofinger & Associates, P.C.
1319 F Street, NW, Suite 200
Washington, DC 20004

---

3       If defendant calls Mr. Reid as a witness, Mr. Woodford will also testify about his poor performance as Director of OAQA.
4       If defendant calls Mr. Reid as a witness, Mr. Donovan will also testify about his poor performance as Director of OAQA.

(202) 393-8200

Christine Allen is an Assistant Director (GS-14) of OA, and serves as the liaison for OAQA.  Ms. Allen will testify about Ms. Makray's expertise in quality assurance; about criticism of Melvin Reid's work prior to his selection for OAQA Director; and that one panel member, Robert "Tony" Dixon, admitted to her that plaintiff was the most qualified candidate for the position.[5]

The estimated time for Ms. Allen's direct testimony is 20 minutes.  She will be called as a witness by plaintiff.

Alvin Edwards[6]
C/o Seldon Bofinger & Associates, P.C.
1319 F Street, NW, Suite 200
Washington, DC 20004
(202) 393-8200

Mr. Edwards is a former Assistant Office Director at DOL OIG OA.  Mr. Edwards will testify about plaintiff's skill, knowledge, and experience in quality assurance, as opposed to Mr. Reid's inferior skills, knowledge, and experience in the same field; about Mr. Reid's selection as OAQA Director; about DOL OIG's failure to promote women into leadership positions; and about the admission of one panel member, Robert "Tony" Dixon, that Ms. Makray was more qualified for the position than Mr. Reid.

The estimated time for Mr. Edwards' testimony is 30 minutes.  He will be called as a witness for plaintiff.

Katrina Bynes

---

5       If defendant calls Mr. Reid as a witness, Ms. Allen will also testify about his poor performance as Director of OAQA.
6       If defendant calls Mr. Reid as a witness, Mr. Edwards will also testify about his poor performance as Director of OAQA.

C/o Seldon Bofinger & Associates, P.C.
1319 F Street, NW, Suite 200
Washington, DC 20004
(202) 393-8200

Katrina Bynes was a GS-13 Auditor in the defendant's Dallas Regional Office.  Ms. Bynes

will testify about the successful progression of her career until she began working under the

supervision of Mr. Raponi, about Mr. Raponi's baseless criticism of her work and his arranging

for her to receive two uncharacteristically low performance ratings, the second by Mr. Yarbrough;

that she was ignored and disparaged by Mr. Raponi; and that she secured a lateral transfer to the

Department of Homeland Security in order separate herself from DOL OIG's discrimination

toward her.

The estimated time for Ms. Bynes' testimony is 20 minutes.  She will be called as a witness

for plaintiff.

Paula Denman
C/o Seldon Bofinger & Associates, P.C.
1319 F Street, NW, Suite 200
Washington, DC 20004
(202) 393-8200

Ms. Denman was a GS-15 Audit Director in the DOL OIG Office of Audit in Dallas, Texas,

and Atlanta, Georgia.  Ms. Denman will testify about her experience sitting on interview panels

with Mr. Raponi and/or Mr. Yarbrough and the influence Mr. Raponi exerted over Mr. Yarbrough.

She will also testify about regarding statements Mr. Raponi made about plaintiff when she applied

to be Director of OPAMR.

The estimated time for Ms. Denman's testimony is 15 minutes.  She will be called as a

witness by plaintiff.

Michael Raponi
C/o Office of the U.S. Attorney for the District of Columbia
Civil Division

501 3rd Street, NW
Washington, D.C. 20350

Mr. Raponi was the Deputy Assistant Inspector General for Audit at all times relevant to this case.  Mr. Raponi will testify about all aspects of the selection of Mr. Reid and Ms. Makray and the actions that led up to them including, but not limited to, the experience of plaintiff and Mr. Reid in OAQA and Quality Assurance; the decision to select Mr. Reid as Acting Director of OAQA in November of 2010 in advance of the OAQA Director selection process; his knowledge of Mr. Reid's accomplishments as Acting Director of OAQA; his knowledge of Mr. Reid's supposed experience in quality assurance in his position as an auditor with the Department of Veterans' Affairs; about the screening, interviewing, and selection process for the OAQA Director position; and about his treatment of other women in OA.

The estimated time for Mr. Raponi's direct testimony is 1 hour.  He will be called as a witness by plaintiff.

Michael Yarbrough
C/o Office of the U.S. Attorney for the District of Columbia
Civil Division
501 3rd Street, NW
Washington, D.C. 20350

Mr. Yarbrough was the Audit Director for the OA's Atlanta office.  He will be called to testify about his participation in the interview and selection process for the OAQA Director position; his failure to preserve the notes from his interview; his past dealings with Mr. Raponi in making selection decisions; and his and Mr. Raponi's discriminatory treatment of other women in OA.

The estimated time for Mr. Yarbrough's direct testimony is 1 hour.  He will be called as a witness by plaintiff.

Robert "Tony" Dixon

C/o Office of the U.S. Attorney for the District of Columbia
Civil Division
501 3rd Street, NW
Washington, D.C. 20350

Mr. Dixon was the Director of DOL OIG's Program Fraud Division and served as a member of the interview panel for the OAQA Director position. Mr. Dixon will be called to testify about his participation in the interview and selection process for the OAQA Director position; and about his impressions of the candidate's interviews, as he relayed to Christine Allen and Alvin Edwards.

The estimated time for Mr. Dixon's direct testimony is 30 minutes. He will be called as a witness by plaintiff.

Elliot Lewis
C/o Office of the U.S. Attorney for the District of Columbia
Civil Division
501 3rd Street, NW
Washington, D.C. 20350

Mr. Lewis is the Assistant Inspector General for Audit and made the written recommendation to former Inspector General Daniel Petrole to select Mr. Reid as OAQA Director. Mr. Lewis will be called to testify about to his role as the recommending official in the selection process for the OAQA Director position, as well as his assessment of the qualifications of Mr. Reid and Ms. Makray and the experience of both in Quality Assurance.

The estimated time for Mr. Lewis' direct testimony is 1 hour. He will be called as a witness by plaintiff.

Robert Coyle
C/o Office of the U.S. Attorney for the District of Columbia
Civil Division
501 3rd Street, NW
Washington, D.C. 20350

Mr. Coyle is the Director OA's Office of Audit Operations and the former Director of

OAQA.  Mr. Coyle will be called to testify about his experience as a direct supervisor of both

plaintiff and the selectee, Mr. Reid; and about their relative skill, knowledge, and experience in

quality assurance.

The estimated time for Mr. Coyle's direct testimony is 20 minutes.  He will be called as a

witness by plaintiff.

Jojuan Cropper
C/o Office of the U.S. Attorney for the District of Columbia
Civil Division
501 3rd Street, NW
Washington, D.C. 20350

Ms. Cropper is a Supervisory HR Specialist for DOL OIG.  Ms. Cropper will testify about

defendant's HR policies, practices and procedures concerning the selection process for vacancies

in DOL OIG, and the screening and selection process that was followed in the selection of the

OAQA Director position.

The estimated time for Ms. Cropper's direct testimony is 15 minutes.  She will be called

as a witness by plaintiff.

Kimberley Lacey
C/o Office of the U.S. Attorney for the District of Columbia
Civil Division
501 3rd Street, NW
Washington, D.C. 20350

Ms. Lacey is the Director of the Division of Human Resources Management for DOL OIG.

Ms. Lacey will testify about defendant's HR policies, practices and procedures concerning the

selection process for vacancies and the requirements for promotion panel members to preserve

their notes.

The estimated time for Ms. Lacey's direct testimony is 15 minutes.  She will be called as a witness by plaintiff.

> Samuel L. Rhames
> C/o Office of the U.S. Attorney for the District of Columbia
> Civil Division
> 501 3rd Street, NW
> Washington, D.C. 20350

Mr. Rhames is the Chief of the Office of Civil Enforcement of DOL's Civil Rights Center. Mr. Rhames will testify that a Final Agency Decision cannot be issued once a complaint has been filed in federal court.

The estimated time for Mr. Rhames' testimony is 10 minutes.  He will be called as a witness by plaintiff.


**Defendant's Witness List**

Defendant shall call the following witnesses to testify during a trial in this matter:

1. **Michael Raponi**
   Former Deputy Assistant Inspector General for the Office of Audit, DOL-OIG
   Current Address:
   U.S. Government Printing Office
   Office of the Inspector General, Stop IG
   732 North Capitol St, NW
   Washington, DC 20401

As the Deputy Assistant Inspector General for the Office of Audit, Mr. Raponi was Plaintiff's second-level supervisor prior to the selection.  As such, he will testify about Plaintiff's job performance, audit skills, attitude, and experience.  Further, Mr. Raponi was a co-worker of Mr. Reid's when the two worked at the Veterans Administration, and had also served as Mr. Reid's first and second-level supervisor at the DOL-OIG in the months leading up to the selection.  As such, he will testify about Mr. Reid's job performance, audit skills, attitude, and

experience.   Mr. Raponi will  testify about his knowledge of, and involvement in, the selection

process for the Director position in the Office of Quality Assurance, including his experience as

a member of the interview panel.  Mr. Raponi may also testify about his knowledge concerning

Ms. Stepney's performance and complaints to the extent they become relevant.


   **2.  Michael Yarbrough**
        Former Audit Director for the Atlanta Regional Office of Audit, DOL-OIG
        Current Address:
        U.S. Department of Agriculture, Office of Inspector General
        401 W. Peachtree Street, Room 2328
        Atlanta, GA 30308

        Mr. Yarbrough will likely testify about his knowledge of, and involvement in, the

selection process for the Director position in the Office of Quality Assurance, including his

experience as a member of the interview panel. Mr. Yarbrough may also testify about his

knowledge concerning Ms. Stepney's performance and complaints to the extent they become

relevant.


   **3.  Robert Dixon**
        Director, Labor Racketeering and Program Fraud Division, Office of Labor
              Racketeering and Fraud Investigations
        U.S. Department of Labor, Office of Inspector General
        200 Constitution Avenue, NW, Room S-5514
        Washington, DC 20210

        Mr. Dixon will likely testify about his knowledge of, and involvement in, the

selection process for the Director position in the Office of Quality Assurance, including his

experience as a member of the interview panel.

4. **Elliot Lewis**
   Assistant Inspector General for the Office of Audit, DOL-OIG
   U.S. Department of Labor, Office of Inspector General
   200 Constitution Avenue, NW, Room S-5512
   Washington, DC 20210

As the Assistant Inspector General for the Office of Audit, Mr. Lewis will likely testify as to the organization's mission, structure, staffing, and operations as they relate to this case.  In addition, he will testify about his knowledge of the selection process for the Director position in the Office of Quality Assurance.  , Mr. Lewis  may provide  testimony about the field of Quality Assurance work in general, and within the DOL OIG in particular. Mr. Lewis  may also testify about his knowledge concerning Ms. Stepney's performance and complaints to the extent they become relevant.

5. **Melvin Reid**
   Director, Office of Audit Quality Assurance
   U.S. Department of Labor, Office of Inspector General
   200 Constitution Avenue, NW
   Washington, DC 20210

Mr. Reid is expected to testify about his experience in the selection process for the position at issue.  In addition, he will also testify as to his professional experience and qualifications for this position as they existed at the time of his application for it.

6. **Kimberly Lacey**
   Former Director of Human Resources
   U.S. Department of Labor, Office of Inspector General
   200 Constitution Avenue, NW
   Washington, DC 20210

As the former Director of Human Resources for the OIG, Ms. Lacey will likely testify about the policies and procedures of the federal hiring process.  In addition, Ms. Lacey will

testify about the OIG's internal hiring and selection procedures and practices, including how these were applied to the selection process for the Director position in the Office of Quality Assurance.

**7. Robert (Bob) Coyle**
   Director, Office of Audit Operations
   U.S. Department of Labor, Office of Inspector General
   200 Constitution Avenue, NW, Room S-5512
   Washington, DC 20210

Mr. Coyle is expected to testify about his experience as the former Director of the Office of Audit Quality Assurance, as well as his experience as the former first-line supervisor of both Ms. Makray and Mr. Reid.

**8.     Charles Allberry**

Mr. Allberry was an Audit Director in the Office of Audit's Chicago Field Office. He has knowledge of Mr. Raponi's tenure as Deputy Assistant Inspector General for the Office of Audit, DOL-OIG from January 2008 through the 2011.

Plaintiff's Objections to Defendant's Witnesses:

**Melvin Reid:**  Plaintiff objects to defendant calling Melvin Reid to testify at trial, as his testimony would be duplicative and irrelevant.  OA management officials will be permitted to testify about their assessment of Mr. Reid's qualifications for the OAQA Director position, and the interview panelists will be able to testify about their assessment of his interview performance. Therefore, Mr. Reid's perception on these matters would be duplicative, and any marginal relevance it has is outweighed by the confusion it would cause the jury in requiring it to separate its perception of Mr. Reid's prepared testimony from others' perception of his interview performance.

**Charles Allberry:**  Plaintiff objects to Mr. Allberry as a witness, on the grounds that 1.) Mr. Allberry was not disclosed and because defendant's failure to disclose was not substantially justified and would be prejudicial; and 2.) Mr. Allberry's proposed testimony as specified by defendant would not be relevant and admissible and, if it were, would be precluded under Rule 403, Fed. R. Civ. P.

**Exhibit List[7]**

| Exh. | Description | Date | Objections |
|------|-------------|------|------------|
| J1 | Makray Application Package (Resume & Self-Assessment) | | |
| J2A | Makray 2011 Performance Appraisal | | |
| J2B | Makray 2010 Performance Appraisal | | |
| J2C | Makray 2009 Performance Appraisal | | |
| J2D | Makray 2008 Performance Appraisal | | |
| J2E | Makray 2007 Performance Appraisal | | |
| P2F | Makray SF-50's | | |
| J3 | Reid Application Package | 1/12/2011 | |
| J4A | Reid 2010 Performance Appraisal | | |
| J4B | Reid 2010 Specific Assignment Appraisal | | |
| J4C | Reid 2009 Performance Appraisal | | |
| P5A | Position Description - OAQA Director Position | | |
| J5B | Vacancy Announcement - OAQA Director Position | 12/9/2010 | |
| P5C | VA Admin Settings | | |

[7]     All exhibits designated by the letter "J" are exhibits both parties' intend to introduce.  Those designated by the letter "P" will be introduced by plaintiff; those designated by letter "D" will be introduced by defendant.  Neither party has any objection over the authenticity of these documents.

| | | | |
|---|---|---|---|
| **P5D** | Application Staging List | 12/24/2010 | |
| **P5E** | Application Staging List | 12/9/2010 | |
| **P5F** | Applicant List - Reid Selection | 1/13/2011 | |
| **J5G** | Cert List | 12/29/10 | |
| **P5H** | Reid SF-50 submitted to Cropper | 11/9/2010 | |
| **P5I** | Email - Cropper-Reid 12-20-12 | 12/22/2010 | |
| **P5J** | Cropper-Raponi-Lemming Emails re: Cert | | |
| **J6A** | Interview Questions | | |
| **J6B** | Panelist Interview Notes/Score Sheet | 1/12/2011 | |
| **J6C** | Reid Selection Memo | 1/18/2011 | |
| **P6D**[8] | Reid Training Evaluations | | See Defendant's Motion *in Limine* |
| **J6E** | Petrole Selection Announcement | | |
| **P6F** | Draft Reid Selection Memo | | |
| **P7A** | OPAMR Director Vacancy/Screening Materials | 2008 | |
| **P7B** | Cancellation of OPAMR Vacancy | 9/3/2008 | |
| **P7C** | Sterling OPAMR Withdrawal | 8/13/2008 | |
| **P7D** | Makray-Gancy Emails re: Supervisory Training Position | 1/10/2010 | |
| **P8A** | 2009 OA Handbook | 2009 | |
| **J8B** | GAGAS Excerpts | 2007 | |
| **P8C** | Website - External Reviews | | |
| **P9A** | Announcement Reid Acting Director | 11/22/2010 | |
| **P9B** | Website - FY 2011 Audit Reports Issued | 7/3/1905 | |
| **P9C** | MSHA Audit Report | | |
| **P10A**[9] | DOL Settlement | | |
| **P10B** | DOL Settlement | | |
| **P10C** | Whitmore Settlement | | |
| **P10D** | Schmidt Judgment | | |

---

8       Plaintiff will only introduce this exhibits if defendant calls Mr. Reid to testify at trial.

9       Plaintiff will only introduce exhibits P10A through P10E if the Court denies plaintiff's Motion *In Limine* seeking to exclude the Final Agency Decision.  ECF # 38.

| **P10E** | Rhames Letter | | |
|---|---|---|---|
| **D11** | FAD | | See Plaintiff's Motion *In Limine* |
| **D12** | OIG Merit Staffing Plan | | |
| **D13** | CPE Training Evaluations | | Rule 37(c)(1), Fed. R. Civ. Pro.; Failure to Disclose |

### Itemization of Damages

Ms. Makray seeks the following damages[10]:

i.      An award of compensatory damages in the maximum amount permitted under 42 U.S.C. §§ 1981a(b)(1), which is $300,000.00.[11]

ii.     Backpay with interest calculated under the Backpay Act, 5 USC § 596(b)(1)(B)(ii), et seq., as prescribed in Section 6621(a)(1)  of the Internal Revenue Code, 26 U.S.C. § 6621(a)(1); step increases; and commensurate benefits, including TSP contributions; retroactive to the date of Mr. Reid's promotion in January of 2011, which would also become the effective date of Ms. Makray's promotion.

iii.    Attorneys' fees and costs as provided under Title VII, 42 U.S.C. § 2005(k), at present totaling approximately $425,000.00.

---

10      Claims for backpay, cash bonuses, and frontpay are not damages, but equitable remedies to be awarded by the Court in a separate post-trial equitable phase if plaintiff prevails. Pollard v. E.I. DuPont DeNemours & Co., 532 U.S. 843, 849 (2001); Martini v. Federal National Mortgage Ass'n, 178 F.3d 1336, 1350 (D.C. Cir. 1999); 42 U.S.C. §2000e-16 (incorporating 42 U.S.C. §1981a(b)(2)). They are in amounts that can only be calculated accurately by an employing agency. In the event plaintiff prevails, at the equitable relief phase, counsel for plaintiff will confer with counsel for defendant to ascertain the precise amounts of backpay, cash bonuses, and retroactive step increases plaintiff would be entitled to.
11      In accordance with LCivR 16.5(b)(8), no monetary amount need be set forth for elements of intangible damages.

**Other Relief Sought by Plaintiff**

Ms. Makray seeks the following non-monetary relief:

i.        Expungement of the Final Agency Decision from agency records.

ii.       Restoration of sick leave in the amount of 200 hours, and annual leave in the amount of two hours.


**Undisputed/Stipulated Facts**

1.        The plaintiff in this action is Laura Makray.

2.        Ms. Makray is female.

3.        Ms. Makray began to work for the Department of Labor's Office of Inspector General, Office of Audit ("OA"), in June of 2006 as a GS-14 Assistant Director in the Office of Audit Quality Assurance ("OAQA").  Ms. Makray is now a GS-14 Assistant Director of the OA Office of National Talent Pool and Training.

4.        The nominal defendant in this case is the Secretary of Labor.  The relevant entity here is the Office of Audit within the Office of Inspector General of the Department of Labor.

5.        The Office of Audit is headed by the Assistant Inspector General for Audit, or AIGA.  At all times relevant, the AIGA was Elliot Lewis.

6.        Directly under the AIGA is the Deputy Assistant Inspector General or DAIGA. Michael Raponi was the principal or only DAIGA from September of 2007, when he was first hired by the Office of Audit, until November of 2011, when he left.

7.        The Office of Audit is headquartered in its National Office in Washington, D.C. This is where the AIGA and the DAIGA, as well as the Inspector General, are located.

8.        In December of 2010, defendant announced the vacancy for the GS-15 position of Director of OAQA.

9.      Prior to the announcement of the vacancy, defendant solicited a male, Melvin Reid, to serve in the position of OAQA Director in an acting capacity.

10.      Ms. Makray applied for the position as did two other internal male candidates, Mr. Reid and Mark Lemke.

11.      Interviews were conducted for the Director of OAQA position on January 12, 2011. All three internal candidates, Ms. Makray, Mr. Reid, and Mr. Lemke, were interviewed.

12.      The interview panel consisted of DAIGA Raponi, Michael Yarbrough,  the then director of the OIG Atlanta Regional Office of Audit, and Robert "Tony" Dixon, the then Director of the OIG Division of Program Fraud.

13.      Mr. Reid was selected for the OAQA Director position and Ms. Makray was not.

Stipulation Concerning Authenticity of Documents and Admissibility of Exhibits

Neither party has any objection to the authenticity of the exhibits.  The parties' respective objections regarding the admissibility of the documents are contained in the exhibit list.

## **Demonstrative  Evidence**
**Defendant: Enlargements of portion of the position description for the Director of Office of Audit Quality Assurance (2011).**

## **Pending Motions *In Limine***

1. Plaintiff's Motion *In Limine*, ECF # 38, seeking exclusion of the Final Agency Decision and evidence of plaintiff's claim of reverse race discrimination at the administrative level.

2. Defendant's Motion *In Limine*, ECF # 40, seeking exclusion of evidence of post-selection performance of the selectee.

3. Defendant's Motion *In Limine,* ECF # 41 seeking exclusion of evidence of alleged

discriminatory treatment of other DOL-OIG employees and "all" evidence from the

<u>Stepney</u> matter.


## PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS

The parties have placed "(Agree)" after voir dire questions where the parties have agreed.


1.) The plaintiff in this case is Laura Makray. Do you know or know of Ms. Makray or have any prior knowledge of her suit? **(Agree)**

2.) The actions at issue in this case were taken by officials of the Office of Audit, of the Office of Inspector General of the U.S. Department of Labor, although the nominal defendant is the Secretary of Labor. Do you work for or have family or close friends who work for or did work for the Department of Labor, including its Office of Inspector General? If so, would you describe that further? **(Agree)**

3.) Ms. Makray is represented by Robert Seldon and Lauren Drabic. Their law firm is Seldon Bofinger & Associates. Do you know or know of Mr. Seldon, Ms. Drabic, or their firm? **(Agree)**

4.) The Department of Labor is represented by Benton Peterson, Peter Pfaffenroth and Lisa Finicane. Mr. Peterson and Mr. Pfaffenroth work for the Office of the United States Attorney for Washington, D.C. Ms. Finicane works in the Inspector General's Counsel's Office. Do you know or know of Mr. Peterson, Mr. Pfaffenroth, Ms. Finicane, the U.S. Attorney's Office, or Office of Legal Counsel for the Office of Inspector General of the Department of Labor? **(Agree)**

5.) There are a number of individuals who I have approved as witnesses and who may appear in this case. At this point, I am going to have the plaintiff's counsel identify for you the witnesses that they may be calling in this case. Do you know or know of these individuals? **(Agree)**

6.) At this point, I am going to have the defendant's counsel identify for you the witnesses that they may be calling in this case who have not already been identified. Do you know or know of these individuals **(Agree)**

7.) There are other individuals whose names you may or may not hear in this case who are not witnesses. They are [to be inserted]. Do you know or know of these individuals? **(Agree)**

8.)     This case is going to involve employment or personnel actions by the Department of Labor.  Do you work for or have family or close friends who work or worked in personnel or human resources departments?  If so, would you describe that experience?  **(Agree)**

9.)     Do you have experience in the fields of human resources, employment, or personnel?  If so, would you describe that experience?  **(Agree)**

10.)    Do you, your family members, your close friends, or your close co-workers have any experience with suits or complaints by an employee or former employee who claims that he or she was discriminated against on account of his or her race, sex, color, national origin, or religion, or who claims that he or she was retaliated against?  If so, would you describe that experience?  **(Agree)**

11.)    Have you, your family members, close friends, or close co-workers ever been alleged to have engaged in discrimination or retaliation?  If so, would you describe that experience?  **(Agree)**

12.)    Do you know whether your employer, religious organization, or other group that you are a part of has any experience with suits or complaints by an employee or former employee who claims that he or she was discriminated against or retaliated against?  If so, would you describe that experience?  **(Agree)**

13.)    Do you have strong opinions about suits involving employment discrimination or retaliation?  If so, would you describe those opinions?  **(Agree)**

14.)    Do you have strong opinions about the federal government or government employees?  If so, would you describe those opinions?  **(Agree)**

15.)    Do you think you would tend to believe the word of a supervisor or senior management official over that of an employee or candidate for promotion?  **(Agree)**

16.)    Do you, your family members, or close friends work as lawyers or for law firms?  If so, would you describe that experience?  **(Agree)**

17.)    Do you, your family members, or close friends have legal training or legal experience?  If so, would you describe that training or experience?  **(Agree)**

18.)    Do you know or know of any of the court personnel?  **(Agree)**

19.)    This case is scheduled until next week.  Do you have any physical or emotional illness or disability or other problem, for example a commitment that cannot be changed, that would make it difficult for you to be a juror in this case if it runs this long?  **(Agree)**

20.)    The witnesses in this case will give testimony that will comprise the oral or spoken evidence.  Do you have any reason to believe that you would be unable to listen to, hear, pay close attention to, and understand the witnesses and their testimony?  **(Agree)**

21.)     There will be documents that will be entered into evidence in this case.  Do you have any reason to believe that you would be unable to see, read and understand the exhibits? **(Agree)**

22.)     I am the Judge in this case and it is my responsibility to make rulings about the evidence.  Some of these rulings may determine which evidence the jury may be permitted to hear and not hear.  If there is no objection and I am not called upon to make a ruling, then that evidence will be part of the record.  Do you have any reason to believe that you would be unable to follow my rulings about which evidence you may or may not be permitted to hear, and to base your decisions as jurors solely on the evidence that I have allowed into the record or that the parties have stipulated to? **(Agree)**

23.)     It is also my responsibility as the Judge to make legal rulings and to give you instructions on the law that you are bound to follow in reaching a verdict.  Do you have any reason to believe that you would be unable to adhere to and understand all of my instructions and rulings? **(Agree)**

24.)     Have you ever been a party in a case in court or before an administrative body?  If you have been:

a.)     What kind of case was it, civil, criminal, or administrative?

b.)     What were the issues?

c.)     Were you satisfied with your treatment and participation as a party?

d.)     Did you believe the outcome was fair?

e.)     Do you have any reason to believe that having been a party in a case before would make you unable to be fair and impartial as a juror in this case?

25.)     Have you ever been a juror in a court case?  If you have been:

a.)     What kind of case was it, civil or criminal?

b.)     What were the issues?

c.)     Were you satisfied with your treatment and service as a juror?

d.)     Did you believe the outcome was fair?

e.)     Do you have any reason to believe that having been a juror before would make you unable to be fair and impartial as a juror in this case? **(Agree)**

26.)     Have you ever been a witness in a case in court or before an administrative body? If you have been:

a.)     What kind of case was it, civil, criminal, or administrative?

b.)     What were the issues?

c.)     Were you satisfied with your treatment and service as a witness?

d.)     Did you believe the outcome was fair? **(Agree)**

e.)     Do you have any reason to believe that having been a witness before would make you unable to be fair and impartial as a juror in this case?

27.)    Have you ever had your deposition or a written statement taken in a case?  If you have:

a.)     What kind of case was it, civil, criminal, or administrative?

b.)     Were you satisfied with your treatment?

c.)     Do you have any reason to believe that having been deposed or giving a written statement would make you unable to be fair and impartial as a juror in this case? **(Agree)**

28.)    Have you ever been involved in a court or administrative case or an investigation in which it was alleged that you or a close family member of friend was subject to discrimination or retaliation?  If so, would you describe that experience? **(Agree)**

29.)    Have you ever been involved in a court or administrative case or an investigation in which it was alleged that you or a close family member or friend received a benefit or a job that you or a close family member or friend would not have received if someone else had not engaged in discrimination or retaliation?  If so, would you describe that experience? **(Agree)**

30.)    Do you have any strong opinions or beliefs one way or the other about lawyers? **(Agree)**

31.)    Have you seen any negative ad campaigns or heard negative public statements about plaintiffs' lawyers?

32.)    Have you seen any negative ad campaigns or heard negative public statements about defendant's lawyers?

33.)    Do you have any reason to doubt the sincerity of plaintiffs or the verdicts or the damage awards that they receive from juries?

34.)    Do you have any reason to doubt the sincerity of defendants or the verdicts that they receive from juries?

35.)    Do you have any reason to believe that you would be unable to participate as a juror impartially and fairly? **(Agree)**

36.)    Do you have any political, moral, religious, or philosophical beliefs that influence your opinion about the fairness and objectivity of the federal government's judicial system, that would preclude you from sitting on a jury, or that would make it difficult or uncomfortable for you to render a fair and impartial verdict based solely on the evidence and the law?

37.)     Is there any reason that I have not already covered that leads you to believe that you should not participate as a juror in this case if chosen? **(Agree)**

Source:     <u>Perry v. Donovan</u>, Civ. Action No. 07-1010 (RCL) ECF #113
            <u>Stepney v. Perez</u>, Civ. Action No. 11-1480 (BJR) (Juror Questionnaire)

<u>**DEFENDANT`S PROPOSED VOIR DIRE QUESTIONS**</u>

The parties have reached agreement concerning most of the proposed voir dire questions, with the exception of defendant's proposed voir dire question numbers 5, 13, 16, and 21.

Defendant's Proposed Question No. 5. This case involves a claim of gender discrimination made by Plaintiff against her employer, the Department of Labor, under Title VII of the Civil Rights Act of 1964.  Specifically, this case would require you to resolve:

> Whether, but for the Department of Labor's intent to discriminate against Laura Makray because of her gender, Ms. Makray would have been selected for the position of GS-15 Director of the Office of Quality Assurance in the Department of Labor's Office of Inspector General's Office of Audit.

Based on this, does any member of the jury panel believe that he or she would have difficulty remaining objective or rendering a verdict based solely on the evidence presented?

Defendant's Proposed Question No. 13:      Have you or any of your relatives or close friends ever been accused of discrimination, been the victim of discrimination, initiated a complaint based upon discrimination, worked in an environment where discrimination was allowed, or been a witness, expert, juror or attorney in a case involving a discrimination complaint? If so, what were the circumstances? How do you think that experience might influence you if you are selected to be a juror in this case?

Defendant's Proposed Question No. 16:  Do you believe that because a person has brought a civil or administrative action against his or her employer that the employer is likely to have done something wrong to that person?

Defendant's Proposed Question No. 21. Do you or other members of your household have training or employment experience in any of the following fields:  Law or the legal profession?  A legislative or legislative committee office dealing with employment issues? Human resources?  Auditing?

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO
DEFENDANT'S PROPOSED VOIR DIRE QUESTIONS**

Counsel for defendant has advised counsel for plaintiff that in light of defendant's agreement with many of plaintiff's proposed voir dire questions, with the exception of proposed question numbers 5, 13, 16, and 21, no response is needed from plaintiff because the other voir dire questions proposed by defendant are no longer necessary.

Defendant's Proposed Question No. 5. This case involves a claim of gender discrimination made by Plaintiff against her employer, the Department of Labor, under Title VII of the Civil Rights Act of 1964.  Specifically, this case would require you to resolve:

Whether, but for the Department of Labor's intent to discriminate against Laura Makray because of her gender, Ms. Makray would have been selected for the position of GS-15 Director of the Office of Quality Assurance in the Department of Labor's Office of Inspector General's Office of Audit.

Based on this, does any member of the jury panel believe that he or she would have difficulty remaining objective or rendering a verdict based solely on the evidence presented?

Objection:  The purposes of voir dire include ensuring that jurors who are impaneled are free from bias; prepared to follow the Court's instructions and to evaluate the evidence thoroughly and neutrally; and capable of serving in the adversarial process physically, emotionally and intellectually.  E.g., Thiel v. Southern Pacific Co., 328 U.S. 217, 220 (1945); Waldorf v. Shuta, 3 F.3d 705, 709 (3rd Cir. 1993).  Voir dire must also elicit sufficient information to allow a party to exercise its peremptory challenges.  Rainey v. Conerly, 973 F.2d 321, 325 (4th Cir. 1992); Art Press, Ltd. V. Western Printing Mach. Co., 791 F.2d 616, 618 (7th Cir. 1986).  The purposes of voir dire questions do not include giving jurors instructions about legal terms, much less partial ones that are erroneous and favor one side.  Defendant's proposed instruction no. 5 impermissibly attempts to interject one sided legal instructions concerning matters such as causation and intent. See, e.g., Pl. Proposed Non-Standard Instructions "Proof of Intent," "Definition of Disparate Treatment," "Agency/Multiple Actors," "Multiple Actors and Proximate Cause."  At the same time, this proposed instruction does not include instructions about matters that are favorable to plaintiff.   See e.g., Pl. Proposed Non-Standard Instructions "Adverse Inference."  Matters like these are never included in voir dire, to the knowledge of plaintiff's counsel.  E.g., Perry v. Donovan, Civ. Action No. 07-1010 (RCL) ECF #113); Stepney v. Perez, Civ. Action No. 11-1480 (BJR) (Juror Questionnaire).

Defendant's Proposed Question No. 13:       Have you or any of your relatives or close friends ever been accused of discrimination, been the victim of discrimination, initiated a complaint based upon discrimination, worked in an environment where discrimination was allowed, or been a witness, expert, juror or attorney in a case involving a discrimination complaint? If so, what were the circumstances? How do you think that experience might influence you if you are selected to be a juror in this case?

Objection:      Plaintiff's proposed <u>voir</u> <u>dire</u> questions numbers 10 through 13, 28 and 29 comprehensively and neutrally explored areas of potential prejudice based on jurors' experience with discrimination and retaliation as well as complaints processes.  Defendant has agreed with them all.  There is no need for additional questioning, and inclusion of the charged word "victim" is impermissible.  Plaintiff's proposed instructions on this issue were the ones used in <u>Perry v. Donovan</u>, Civ. Action No. 07-1010 (RCL) ECF #113);

<u>Defendant's Proposed Question No. 16</u>:  Do you believe that because a person has brought a civil or administrative action against his or her employer that the employer is likely to have done something wrong to that person?

<u>Response</u>:  Plaintiff's has no objection to this question if it also includes the following, which is necessary to ensure that it is balanced:  "Do you believe that because an employer has defended a civil or administrative action against an employee that the employer is less likely to have done something wrong to that person?"

<u>Defendant's Proposed Question No.</u> 21. Do you or other members of your household have training or employment experience in any of the following fields:  Law or the legal profession?  A legislative or legislative committee office dealing with employment issues?  Human resources?  Auditing?

Objection:      Defendant's proposed instruction duplicates Plaintiff's Proposed Instruction No. 9, which is aims to elicit information to ascertain if there is a potential "expert" on the jury.  Plaintiff has no objection to including in her Proposed Instruction a question about one of defendant's proposed areas of "expertise," prior experience in auditing.  Plaintiff objects to inclusion of a question about a "legislative or legislative committee office dealing with employment issues," because it is imbalanced and imprecise, asking about work relating to "employment issues" without definition and without concomitant questions about working for bodies opposed to unionization or funding for public employment.  Plaintiff has no objection in principle to a question that would cover all of these areas in a balanced fashion, but respectfully submits that doing so would not be possible.

**PLAINTIFF'S PROPOSED STANDARD INSTRUCTIONS**
**(<u>TO BE GIVEN AFTER CLOSING ARGUMENT</u>)**

**Standard Instruction 1-1: Function of the Court**

The function of the judge is to conduct the trial of the case in an orderly, fair, and efficient manner.  The judge also must rule upon questions of law arising during the trial, and must tell you the law that applies to this case.  It is your duty to accept the law as I state it to you without questioning the wisdom of these instructions.  In other words, even if you disagree or do not understand the reasons for any of the instructions, you are bound to follow them.


Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 1-2: Function of the Jury**

Your function as jurors is to decide the facts.  You are the exclusive judges of the facts. You alone determine the weight, the effect and the value of the evidence, and the believability of the witnesses.

You should decide the facts from a fair evaluation of all of the evidence, without prejudice, sympathy, fear or favor for either party.

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 1-3: Significance of Party Designations**

During the course of the trial, you have heard references to the terms plaintiff and defendant.  To put it as simply as possible, the plaintiff is the person who starts a lawsuit and the defendant is the person who is sued by the plaintiff.

During your deliberations, you must not attach any significance in weighing the evidence to the terms plaintiff and defendant.  In other words, the fact that the plaintiff has filed a lawsuit against the defendant does not mean that the plaintiff is entitled to your verdict or that her evidence is entitled to greater weight than the defendant's evidence.  A plaintiff must prove every element of her claim against a defendant by a preponderance of the evidence before she is entitled to prevail.  [Likewise a defendant must prove every element of its defense by a preponderance of the evidence.]

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standardized Instruction 1-4:  Juror's Duty to Deliberate**

It is your duty as jurors to consult with one another and to deliberate expecting to reach an agreement.  You must decide the case for yourself but you should do so only after thoroughly discussing it with your fellow jurors.  You should not hesitate to change an opinion when convinced that it is wrong.  You should not be influenced to vote in any way on any question just because another juror favors a particular decision or holds an opinion different from your own.  You should reach an agreement only if you can do so in good conscience.  In other words, you should not surrender your honest beliefs about the effect or weight of evidence merely to return a verdict or solely because of other jurors' opinions.


Source:  Standardized Civil Jury Instructions for the District of Columbia.

**Standardized Instruction 1-5:  Attitude and Conduct of Jurors**

Remember that you are not advocates in this matter.  You are neutral judges of the facts. The final test of the quality of your service will lie in the verdict which you return to this courtroom. You will make an important contribution to the cause of justice if you arrive at a just and proper verdict in this case.  Therefore, during your deliberations in the jury room, your purpose should not be to support your own opinion but to determine the facts.

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standardized Instruction 1-6: Instructions to be Considered as a Whole**

You must treat and consider all of these instructions as a whole.  You must not single out any particular instruction or sentence while ignoring others.  You must give each instruction equal importance and consider each one equally with all other instructions.


Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 1-7:  Court's Commenting on the Evidence**

The law permits me to comment to you about the evidence in this case.  My comments are only my opinions about the facts, and you are not bound by my opinions.  If, during the course of this trial, or the giving of these instructions, I have made or make any comment on any evidence, you are free to disregard the comment.  Remember, you are the sole and exclusive judges of all questions of fact in this case.


Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 1-8:  Court's Questions to Witnesses**

During the course of the trial, I may have asked questions of a witness to obtain information or to bring out facts.  You should not take my questions to witnesses as any indication of my opinion about how you should determine the facts.

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 1-9: Jury Not to Take Cue from Judge**

If I have said or done anything at any time during this case, including giving these instructions, which seemed to indicate my opinion on any of these matters, then I instruct you to disregard that indication.  Nothing I have said or done should influence or suggest to you that I favor any party in this case.

I have not meant to express, or to suggest, any opinion about which witnesses should be believed, or which facts are established.

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 1-10:  Rulings on Objections**

There may have been times during the trial when a lawyer made an objection to a question asked by another lawyer or to an answer given by a witness.  It is the duty of a lawyer to make objections if the lawyer believes something improper is being done.  When I sustained an objection to a question, the witness was not allowed to answer it.  Do not attempt to guess what the answer might have been had I allowed the question to be answered [or why I did not allow a witness to answer a question.]  Similarly, when I told you to disregard a particular answer – when I ordered it stricken – you should have put that statement out of your mind, and you may not refer to that stricken answer during your deliberations.

While it may have been natural for you to become impatient with the delay caused by objections or other portions of the proceedings, you must not let your feelings in any way affect your deliberations.  Those interruptions concerned legal matters, while your job is to decide the facts.  You should not be influenced by any lawyer's objections, no matter how I ruled upon them.

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 1-11: Equality of Litigants – Government Agencies
And Employees**

Our system of justice requires that you decide the facts of this case in an impartial manner. You must not be influenced by bias, sympathy, prejudice or public opinion.  It is a violation of your sworn duty to base your verdict on anything other than the evidence in the case.

In reaching a just verdict, you must consider and decide this case as an action between persons of equal standing in the community and of equal worth.   All persons, including [government employees and government agencies,] stand equal before the law and are to be treated as equals in this court.  In other words, the fact that a party is [a federal employee or a government agency] must not affect your decision.

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 2-1: Evidence in the Case**

You may consider only the evidence properly admitted in the case.  Evidence includes the sworn testimony of witnesses, exhibits admitted into evidence, and facts stipulated and agreed to by counsel.


Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 2-2:  Evidence in the Case--Judicial Notice**

Another type of evidence includes facts of which I take judicial notice.  I may take judicial notice of public acts, places, facts and events which I regard as matters of common knowledge.  When I take judicial notice of a particular fact, you may regard that fact as included in the evidence and proven.

In this case, I have taken judicial notice of regulations of the U.S. Equal Employment Opportunity Commission provide that:  "Any personnel or employment record made or kept by an employer … and other records having to do with hiring, promotion, demotion" and other covered employment practices "shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved" and "[w]here a charge of discrimination has been filed … until final disposition of the charge or the action," whichever comes later.

I have also taken judicial notice or regulations of the U.S. Office of Personnel Management, the federal agency responsible for setting policy on government-wide hiring procedures and managing federal job announcement postings that provide that all such records must be preserved for at least two years.

The records that must be preserved include interview panel members' notes.

I have also taken judicial notice of a federal law that prohibits the federal government from making employment decisions based on pre-selection

Source:  Standardized Civil Jury Instructions for the District of Columbia; 29 C.F.R. §1602.14; 5 C.F.R. §335.103(b)(5) (2002); 5 U.S.C. §2302(b)(12)) (incorporating 5 U.S.C. §2301(b); Special Counsel v. Lee and Beatrez, 114 M.S.P.R. 57 (2010);Talavera v. Shah, 638 F.3d 303, 311-12 (D.C. Cir. 2011).

**Standard Instruction 2-3:  Inferences**

[] When you are considering the evidence, [] you are not limited solely to the statements of the witnesses.  You are permitted to draw from the evidence any inferences or conclusions that reason and common sense lead you to make.


Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 2-4:  Inadmissible and Stricken Evidence**

It is the duty of the lawyers to object when the other side offers testimony or other materials which a lawyer believes are not properly admissible in evidence.

If, during the course of the trial, I sustained an objection by one lawyer to a question asked by the other lawyer, you are to disregard the question and you must not guess what the answer would have been.  If a question was asked and the witness answered it, and I ruled that you should not consider the answer, then you must disregard both the question and the answer in your deliberations just as if the question and answer had never been spoken.

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 2-5:  Statements of Counsel**

Statements and arguments of the lawyers, such as their opening statements and closing arguments, are not evidence.  They are only intended to help you understand and interpret the evidence from each party's perspective.

The questions that the lawyers ask are not evidence.  A lawyer's question that contains an assertion of a fact does not provide evidence of that fact.


Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 2-6:  Jury's Recollection Controls**

During this case, I or the lawyers may have called your attention to certain evidence.  If you remember that evidence differently from the way I or the lawyers stated it, then you should disregard our characterization of the evidence and rely upon your own memory.


Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 2-8:  Burden of Proof**

The party who makes a claim has the burden of proving it.  This burden of proof means that the plaintiff must prove every element of her claim by a preponderance of the evidence.  To establish a fact by a preponderance of the evidence is to prove that it is more likely so than not so. [Likewise a defendant must prove every element of its defense by a preponderance of the evidence.]  In other words, a preponderance of the evidence means that the evidence produces in your mind the belief that the thing in question is more likely true than not true.

If, after considering all of the evidence, the evidence favoring the plaintiff's side of an issue is more convincing to you, and causes you to believe that the probability of truth favors the plaintiff on that issue, then the plaintiff will have succeeded in carrying the burden of proof on that issue. [The same is true concerning any defenses issued by the defendant's side.]

The term "preponderance of the evidence" does not mean that the proof must produce absolute or mathematical certainty, and it does not mean proof beyond a reasonable doubt as is required in criminal cases.

Whether there is a preponderance of the evidence depends on the quality, and not the quantity, of evidence.  In other words, merely having a greater number of witnesses or documents bearing on a certain version of the facts does not necessarily constitute a preponderance of the evidence.

If you believe that the evidence is evenly balanced, on an issue the plaintiff had to prove, then the plaintiff has not carried the burden of proof and your finding on that issue must be for the defendant.  [If you believe that the evidence is evenly balanced on an issue the defendant had to prove, then the defendant has not carried the burden of proof and your finding on that issue must be for the plaintiff.]

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 2-9:  Evidence Produced by Adversary**

In determining whether any fact has been proved by a preponderance of the evidence, you should consider all the evidence bearing upon that fact, regardless of who produced it.  A party is entitled to benefit from all evidence that favors her whether she produced it or her adversary produced it.


Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 2-10:  Direct and Circumstantial Evidence**

There are two types of evidence:  direct and circumstantial.  Direct evidence is the direct proof of a fact, such as the testimony of an eyewitness.  Circumstantial evidence is indirect evidence of a fact which is established or logically inferred from a chain of other facts or circumstances.  For example, direct evidence of whether an animal was running in the snow might be the testimony of a person who actually saw the animal in the snow.  Circumstantial evidence might be the testimony of a person who saw the tracks of the animal in the snow, rather than the animal itself.

You [must] consider both types of evidence equally.  The law makes no distinction between the weight to be given either direct or circumstantial evidence.  The law does not require a greater degree of certainty for circumstantial evidence than of direct evidence [and does not require a plaintiff to prove his or her case with direct evidence or a defendant to prove its defenses with direct evidence].  You should weigh all the evidence in the case, both direct and circumstantial, and find the facts in accordance with that evidence.

Source:  Standardized Civil Jury Instructions for the District of Columbia
Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-100 (2003)

**Standard Instruction 3-1:  Jury to Determine Credibility of Witnesses**

In evaluating the evidence and deciding what the facts are, you must consider and weigh the testimony of all the witnesses who have appeared before you.  You are the sole judges of the credibility of the witnesses.  In other words, you alone are to determine whether to believe any witness and to what extent any witness should be believed.  If there is any conflict in the testimony between a witness's testimony and other evidence, it is your function to resolve the conflict and to determine where the truth lies.

In deciding the credibility of any witness, you may consider any matter that may have a bearing on the subject.  You may consider the appearance and the behavior of the witness on the witness stand; whether the witness impresses you as a truthful individual; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case; or whether the witness has any friendship or animosity toward other persons concerned in this case.

You may consider the reasonableness or unreasonableness, and the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate.  You may consider whether the witness has been contradicted or corroborated by other credible evidence.

If you believe that any witness has shown himself to be biased or prejudiced, either for or against either side in this trial, you may consider and decide whether that bias or prejudice has colored the testimony of the witness so as to affect the witness's desire and capability to tell the truth.

You should give the testimony of each witness as much weight as in your judgment it is fairly entitled to receive.

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 3-2:  Number of Witnesses**

The relative weight of the evidence on a particular issue is not determined by the number of witnesses testifying for either side.  You should consider all the facts and circumstances in evidence to determine which of the witnesses are worthy of greater belief.  You may find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side. Indeed, the testimony of a single witness, which you believe to be the truth, is enough to prove any fact.

If, after considering all the evidence in the case, you hold a greater belief in the accuracy and reliability of one or a few witnesses' testimony, then you may base your verdict on that testimony, even though a larger number of witnesses may have testified to the contrary.

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 3-2:  Failure to Produce Stronger Available Evidence**

If a party to this case failed to produce relevant evidence which was peculiarly [] available to that party, and that party did not sufficiently explain why it was not produced, then you may infer that the evidence would have been unfavorable to that party.

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 3-4:  Failure to Produce Stronger Available Evidence**

If a party to this case failed to produce relevant evidence which was especially available to that party, and that party did not sufficiently explain why it was not produced, then you may infer that the evidence would have been unfavorable to that party.

If a party to this case failed to call a witness who could have given relevant testimony, even though the witness was especially available to that party, and that party did not sufficiently explain why he or she was not called, then you may infer that the testimony would have been unfavorable to that party.

However, you should not draw such an inference from the absence of evidence or a material witness if that evidence or witness was equally available to both parties, or the evidence or testimony would have been merely cumulative or immaterial.

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 3-5:  Depositions as Evidence**

During the trial of this case, certain testimony has been read to you. You should give to this testimony the same consideration [as to its weight and credibility,] as you give to the testimony of witnesses who testified here in court. You must not discount any testimony merely because it was read to you.

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 3-8: Impeachment by Prior Inconsistent Statement**

The testimony of a witness may be discredited or impeached by showing that he or she has previously made statements which are inconsistent with his or her present courtroom testimony. It is for you to decide whether a witness made a statement on an earlier occasion and whether it was in fact inconsistent with the witness's testimony in court here.

If a witness at trial has been confronted with a prior statement which that witness made, and that prior statement is inconsistent with his testimony here in court, then you may consider the prior statement when you assess the truthfulness of the testimony he gave in court.

If the witness made the prior inconsistent statement under oath subject to the penalty of perjury, then you may also treat that prior statement as evidence in this case – that is, you may treat what the witness said in that prior statement as evidence like any other evidence in this case.

If the witness was not under oath [or] subject to the penalty of perjury when he made the statement, then you may not treat the prior statement as evidence of the facts in the statement. You may consider the statement only to evaluate the witness's credibility, that is, you may use the prior statement only to determine whether to believe the witness's present testimony in court.

If you believe that any witness has been discredited or impeached, then you should give his or her testimony the weight, if any, that you judge it is fairly entitled to receive.

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 3-9:  Prior Inconsistent Statements**

If a witness testifies that a prior inconsistent statement is the truth, then you may consider the prior statement both to evaluate the witness's credibility and as evidence of the truth of any fact contained in that statement.


Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 3-10:  Charts and Summaries**

The lawyers have shown you various charts and summaries to help explain the facts . The facts in these charts and summaries come from books, records, and other documents which are in evidence in the case.  The charts or summaries themselves, however, are not evidence or proof of any facts.  [Unless their admission has been stipulated to], if any chart or summary does not correctly reflect facts or figures shown by the evidence in the case [as you recall it], then you [may] disregard that chart or summary [in whole or in part].

In other words, the charts or summaries are used only as a convenience; you should disregard entirely [or in part] any chart or summary that does not state the truth based on the evidence [as you recall it].

Source:  Standardized Civil Jury Instructions for the District of Columbia

**Standard Instruction 4-5:  Consideration of the Evidence**
**[Institutional Defendant]**

The defendant is a [government agency.  A government agency] can act only through individuals as its [] employees, [managers and officials].  In general, if any []employee [or manager or official of a government acency] acts or makes statements while acting within the scope of his or her authority [] or within the scope of his or her duties as an employee [manager or official], then under the law those acts and statements are of the corporation.

*DEFENDANT'S PROPOSED GENERAL INSTRUCTIONS WITH PLAINTIFF'S OBJECTIONS*

Counsel for defendant has advised counsel for plaintiff that in light of the parties' agreement concerning  many of the proposed standard instructions, with the exception of defendant's proposed standard instructions numbers 1, 5, 18, 28, and 32, no response is needed from plaintiff because the other instructions proposed by defendant are no longer necessary.

**Proposed General Instruction No. 1: General Introduction; Province of the Court and Jury**

Members of the Jury:  Now that you have heard the evidence and the arguments of counsel, it is my duty to give you the instructions of the Court as to the law applicable to this case.

It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts as you find them from the evidence in the case.  You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.  Nor are you to be concerned with the wisdom of any rule of law stated by me.

Counsel have quite properly referred to some of the governing rules of law in their arguments.  If, however, any difference appears to you between the law as stated by counsel and that stated by me in these instructions, you are, of course, to be governed by my instructions.

Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of the case.  It is not my function to determine the facts, but rather yours.

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be governed by sympathy, prejudice, or public opinion.  Both parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

*Authority:* Adapted from 3 O'Malley, Grenig & Lee, Federal Jury Practice & Instructions § 101.10 (5th ed. 2000).

<u>Objection</u>:  Plaintiff's Proposed Standard Instructions include Nos. 1-1 and 1-2 of the D.C. Standardized Civil Jury Instructions for the District of Columbia.  These two instructions contain established general instructions entitled "Function of the Court" and the "Function of the Jury" and have been routinely delivered in this jurisdiction.  <u>E.g.</u>, <u>Elion v. Jackson</u>, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 2-3); <u>Perry v. Donovan</u>, C.A. No. 07-1010 (RCL) (ECF #125 at 1).  References to arguments of counsel are unnecessary and/or duplicative of No. 2-5 of the Standardized Civil Jury Instructions for the District of Columbia.  The reference to sympathy is unnecessary, biased, and the supposed authority for this instruction, West <u>Federal Jury Practice and Instructions</u>, Vol. 3 §101.10, does not contain such an instruction.

**Proposed General Instruction No. 5:  Attitude and Conduct of Jurors**

Remember that you are not advocates in this matter.  You are neutral judges of the facts.

The final test of the quality of your service will lie in the verdict which you return to this courtroom.

You will make an important contribution to the cause of justice if you arrive at a just and proper

verdict in this case.  Therefore, during your deliberations in the jury room, your purpose should

not be to support your own opinion but to determine the facts.

*Authority:* Standardized Civil Jury Instructions for the District of Columbia, Matthew & Bender, Inc. 2012, § 1.05.


Response:  Plaintiff's Proposed Standard Instructions include No. 1-5 of the Standardized Civil Jury Instructions for the District of Columbia.  The instructions contains established general instructions entitled, which is entitled "Attitude and Conduct of Jurors" and has been routinely delivered in this jurisdiction.  E.g., Elion v. Jackson, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 8); Perry v. Donovan, C.A. No. 07-1010 (RCL) (ECF #125 at 2).  Defendant's proposed general instruction is duplicative.

**Proposed General Instruction No. 18:  Number of Witnesses and Exhibits**

The relative weight of the evidence on a particular issue is not determined by the number of witnesses testifying for either side or the number of exhibits being offered.  You should consider all the facts and circumstances in evidence to determine which of the witnesses are worthy of greater belief and which of the exhibits are worthy of greater belief.  You may find that the testimony of a smaller number of witnesses or the presentation of a small number of exhibits on one side is more believable than the testimony of a greater number of witnesses or the presentation of a greater number of exhibits on the other side.  Indeed, the testimony of a single witness or the presentation of a single piece of evidence, which you believe to be the truth, is enough to prove any fact.  If, after considering all the evidence in the case, you hold a greater belief in the accuracy and reliability of one or a few witnesses' testimony, or one or a few exhibits, then you may base your verdict on that testimony or on that one or several exhibits, even though a larger number of witnesses may have testified to the contrary, or a larger number of exhibits may have suggested the contrary.

*Authority:*  Standing Instructions of Magistrate Judge Facciola

Response:        Plaintiff's Proposed Standard Instructions include No. 2-8 of the Standardized Civil Jury Instructions for the District of Columbia.  The instruction contains established general instructions entitled "Burden of Proof" and has been routinely delivered in this jurisdiction.  E.g., Elion v. Jackson, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 8); Perry v. Donovan, C.A. No. 07-1010 (RCL) (ECF #125 at 2).  Defendant's proposed general instruction is duplicative.

**Proposed General Instruction No. 28: Compensatory Damages**

I am now going to instruct you about how to calculate damages. You should not consider the fact that I am giving you this instruction as suggesting any view of mine as to which party is entitled to your verdict in the case, or that I think you should award damages. Those decisions are entirely for you to make. I am giving you these instructions solely for your guidance, in the event that you find in favor of Ms. Makray on her claims against the Department of Labor Office of Inspector General and decide to award her damages.

You may award money damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-monetary losses, but only if you find, by a preponderance of the evidence, that Ms. Makray actually suffered those losses and that those losses were actually caused by the conduct that Ms. Makray alleges to be discriminatory, namely her non-selection to the GS-15 Director of Office of Audit Quality Assurance position, as opposed to by other reasons.

In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing the amount of damages, drawing reasonable inferences from the facts in evidence. You may award compensatory damages only for injuries that the plaintiff proved were caused by the defendant's allegedly wrongful conduct. You may not award damages based on sympathy, prejudice, speculation, or guess-work. On the other hand, the law does not require that a plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit. The damages that you award must be fair compensation, no more and no less.

Your award of compensatory damages must not include any amounts for loss of pay, back wages, salary, leave, or other benefits, or attorney fees or litigation costs.  Any award of any amounts for these items, if appropriate, is for the Court to decide and award after trial.

You may not award any punitive damages in the case.  Thus, you may not base any monetary award on a desire to punish the defendant, to prevent any unlawful conduct in the future, or to warn other employers not to engage in unlawful conduct.  Rather, any monetary award that you make must be calculated solely to provide fair compensation to the plaintiff for her actual injuries caused by unlawful discrimination and no other basis.

Further, compensation for any emotional pain and suffering, inconvenience, mental anguish, and physical stress induced by the prosecution of the lawsuit, may not be part of any award of damages to Ms. Makray.  A defendant has the right to defend itself, and therefore a plaintiff may not recover for any emotional pain and suffering, inconvenience, mental anguish, and physical stress caused by bringing, asserting, arguing, or otherwise litigating her claim.

*Authority:* Adapted from 3 O'Malley, Grenig & Lee, Federal Jury Practice & Instructions § 171.90 (5th ed. 2001); Standing Instructions of Magistrate Judge Facciola; 42 U.S.C. § 1981a(b)(1) (no punitive damages); *Stoleson v. United States*, 708 F.2d 1217, 1223 (7th Cir. 1983) (noting that to recover damages for litigation-induced stress would frustrate the right that a defendant has the right to defend herself in court); *Knussman v. Maryland*, 272 F.3d 625, 642 (4th Cir. 2001) ("Generally speaking, litigation-induced emotional distress is never a compensable element of damages."); *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 79 (1st Cir. 2001) (noting that stress induced by litigation is not ordinarily recoverable as an element of damages); *Blakey v. Continental Airlines, Inc.*, 992 F. Supp. 731, 736 n.3 (D.N.J. 1998) (noting that plaintiff cannot recover for emotional distress caused by litigation).

Objection:      Plaintiff's Proposed Non-Standard Instruction "Compensatory Damages" captures relevant provisions Nos. 12-01, 12-02, and 12-03 of the Standardized Civil Jury Instructions for the District of Columbia, tailors them to employment cases; and in almost all respects have been delivered routinely delivered in this jurisdiction.  E.g., Elion v. Jackson, C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 44-46); Perry v. Donovan, C.A. No. 07-1010 (RCL) (ECF #125 at 9); Rattigan v. Holder, Civ. Acton. No. 04-1009 (ESH) (ECF #111 at 28).  It is superior in every respect to defendant's proposed non-standard instruction, balanced, and correct

in its statement of the law and specification of Ms. Makray's burden of proof and elements of recovery, which defendant's is not.

Defendant's statements that Ms. Makray plaintiff can only be awarded damages "actually caused" or "proved were caused" by defendant's unlawful act is improper <u>per</u> <u>se</u>.  Plaintiff's Proposed Non-Standard Instructions "Multiple Actors/Proximate Cause" and "Compensatory Damages" accurately sets forth the law that defendant is liable for all damages proximately caused by defendant's violation of Title VII.  <u>Staub v. Proctor Hosp.</u>, 131 S. Ct. 1186, 1192 (2011) (citing and quoting <u>Hemi Group, LLC v. City of New York</u>, 559 U.S. ____, 130 S.Ct. 983, 989, (2010); <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, 704, 718 (2004); <u>Exxon Co., U.S.A. v. Sofec, Inc.</u>, 517 U.S. 830, 837, 116 S.Ct. 1813, 135 L.Ed.2d 113 (1996)).

Defendant's proposed non-standard instruction impermissibly fails to mention all of the injuries that compensatory damages may cover, specifically those based on damages to Ms. Makray's career, or the fact that an award of damages, even if only in a nominal amount, is required if the jury finds in her favor.  42 U.S.C. §§1981a(b)(3); <u>Carey v. Piphus</u>, 435 U.S. 247, 266 (1978).

The discussion of punitive damages in this proposed instruction is unnecessary unless plaintiff offers evidence that she is seeking an award of punitive damages.  If an instruction about punitive damages is delivered, it would not be balanced unless it also included language to the effect that:  "Rather, any monetary award that you make must be calculated solely to provide fair compensation to Ms. Stepney for her actual injuries that were caused by unlawful discrimination and retaliation."  <u>Caudle v. District of Columbia</u>, C.A. No. 08-0205 (BJR), Instruction No. 24.

An instruction to the jury about not awarding damages based on the stress induced by litigation is improper.  The principle of law at issue relates to a different matter; namely, to remit an award of damages because, unless they included an impermissible amount for mental distress caused solely by litigation, they had to exceed the maximum amount of compensatory damages that a plaintiff could have been awarded otherwise.  <u>E.g.</u> <u>Stoleson v. United States</u>, 708 F.2d 1217, 1223 (7th Cir. 1983).  An instruction to this effect would impermissibly suggest that the jury must exclude damages caused by the passage of time when, and unlike the plaintiffs in cases cited by defendant such as <u>Stoleson</u> and <u>Knussman v. Maryland</u>, 272 F.3d 625, 639 (4th Cir. 2001), the injuries caused by a defendant's unlawful actions are not finite and continuing.  Further, unless and until there is evidence to support the exclusion of damages for the stress of litigation from an award to Ms. Makray, that an award of damages should be based on stress, anxiety, and loss of enjoyment caused by this litigation

In the event that an instruction relating to damages caused by litigation is included, plaintiff respectfully submits should also include language to the effect that:  "However, the law requires a plaintiff in a Title VII action to utilize administrative remedies and the federal government to remedy correct discriminatory actions before he or she may bring suit in court and to avoid the need for suit.  Your award of compensatory damages may take account of the four years that has elapsed since Ms. Makray's claim arose in January of 2011, and the stress, anxiety and loss of

enjoyment of life that was caused her in that period of time."  <u>See</u> <u>Brown v. Marsh</u>, 777 F.2d 8, 14 (D.C. Cir. 1985); <u>Loe v. Heckler</u>, 768 F.2d 409, 418 (D.C. Cir. 1985).

**Proposed General Instruction No. 32: Sympathy**

Under your oath as jurors you are not to be swayed by sympathy. You should be guided solely by the evidence presented during the trial, without regard to the consequences of your decision.

You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence. If you let sympathy interfere with your clear thinking there is a risk that you will not arrive at a just verdict. All parties to a civil lawsuit are entitled to a fair trial. You must make a fair and impartial decision so that you will arrive at the just verdict.

*Authority:* Adapted from 4-77 Modern Federal Jury Instructions -- Civil, Instruction 77-10 (Matthew Bender).

Objection:    Plaintiff's Proposed Standard Instructions include No. 1-11 and of the Standardized Civil Jury Instructions for the District of Columbia. The instruction, entitled "Equality of Litigants," contains established general instructions concerning the exclusion of sympathy in a finding of liability. Plaintiff's Proposed Non-Standard Instruction "Damages" contains a same instruction as it applies to damages, and it has been routinely delivered in this jurisdiction. E.g., Elion v. Jackson, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 46); Caudle v. District of Columbia, Jury Instructions Civil Action No. 08-0205 (BJR) (at 25). The inclusion of a separate instruction on the subject of "sympathy," or in this case defendant's third such instruction, implicitly and impermissibly highlights the concept of sympathy and implies to the jury that it is a special category of liability and damages, which it is not.

*DEFENDANT'S OBJECTIONS TO*
*PLAINTIFF'S PROPOSED GENERAL INSTRUCTIONS*

In light of the parties' agreement concerning most of the proposed standard instructions defendant lists below plaintiff's proposed standard instructions numbers to which defendant has an objection:

**Standard Instruction 1-3: Significance of Party Designations**
During the course of the trial, you have heard references to the terms plaintiff and defendant. To put it as simply as possible, the plaintiff is the person who starts a lawsuit and the defendant is the person who is sued by the plaintiff.
During your deliberations, you must not attach any significance in weighing the evidence to the terms plaintiff and defendant. In other words, the fact that the plaintiff has filed a lawsuit against the defendant does not mean that the plaintiff is entitled to your verdict or that her evidence is entitled to greater weight than the defendant's evidence. A plaintiff must prove every element of her claim against a defendant by a preponderance of the evidence before she is entitled to prevail. **[Likewise a defendant must prove every element of its defense by a preponderance of the evidence.]**
Source: Standardized Civil Jury Instructions for the District of Columbia


***Defendant: Objection***. This instruction will likely lead to confusion.  Further it implies that defendant has an equal burden of proof as the plaintiff.


**Standard Instruction 2-2: Evidence in the Case--Judicial Notice**
Another type of evidence includes facts of which I take judicial notice. I may take judicial notice of public acts, places, facts and events which I regard as matters of common knowledge. When I take judicial notice of a particular fact, you may regard that fact as included in the evidence and proven.  In this case, I have taken judicial notice of regulations of the U.S. Equal Employment Opportunity Commission provide that: "Any personnel or employment record made or kept by an employer … and other records having to do with hiring, promotion, demotion" and other covered employment practices "shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved" and "[w]here a charge of discrimination has been filed … until final disposition of the charge or the action," whichever comes later.

I have also taken judicial notice or regulations of the U.S. Office of Personnel Management, the federal agency responsible for setting policy on government-wide hiring procedures and managing federal job announcement postings that provide that all such records must be preserved for at least two years.

The records that must be preserved include interview panel members' notes.
Source: Standardized Civil Jury Instructions for the District of Columbia; 29 C.F.R.
§1602.14; 5 C.F.R. §335.103(b)(5) (2002); Talavera v. Shah, 638 F.3d 303, 311-12 (D.C. Cir.
2011); www.opm.gov/about-us/.

***Defendant: Objection.*** There is no precedent indicating that the destruction of evidence in
violation of 29 C.F.R. § 1602.14 gives rise to a per se inference of spoliation.  Instead, a review
of  case law shows a case by case determination on whether an adverse inference is appropriate,
paying particular attention on whether the erring party acted in bad faith. Talavera v. Shah, 638
F.3d 303, 311-12 (D.C. Cir. 2011).   Unlike in Talavera, there is no evidence that anyone was
acting in bad faith when the records were thrown away.  *Id.*

**Standard Instruction 2-3: Inferences**
When you are considering the evidence, you are not limited solely to the statements
of the witnesses. You are permitted to draw from the evidence any inferences or conclusions that
reason and common sense lead you to make.
Source: Standardized Civil Jury Instructions for the District of Columbia


**Defendant:** ***Objection***. ( Noting the differences between an inference and speculation. With
agreement on the edits, no objection.)



**Standard Instruction 2-4: Inadmissible and Stricken Evidence**
It is the duty of the lawyers to object when the other side offers testimony or other materials
which a lawyer believes are not properly admissible in evidence.
If, during the course of the trial, I sustained an objection by one lawyer to a question asked
by the other lawyer, you are to disregard the question and you must not guess what the answer
would have been. If a question was asked and the witness answered it, and I ruled that you
should
not consider the answer, then you must disregard both the question and the answer in your
deliberations just as if the question and answer had never been spoken.
Source: Standardized Civil Jury Instructions for the District of Columbia



**Defendant*: Objection*.**  Duplicative of Standard Instruction 1-10.

**Standard Instruction 2-8: Burden of Proof**

The party who makes a claim has the burden of proving it. This burden of proof means that the plaintiff must prove every element of her claim by a preponderance of the evidence. To establish a fact by a preponderance of the evidence is to prove that it is more likely so than not so.

[Likewise a defendant must prove every element of its defense by a preponderance of the evidence.] In other words, a preponderance of the evidence means that the evidence produces in your mind the belief that the thing in question is more likely true than not true.

If, after considering all of the evidence, the evidence favoring the plaintiff's side of an issue is more convincing to you, and causes you to believe that the probability of truth favors the plaintiff on that issue, then the plaintiff will have succeeded in carrying the burden of proof on that issue.

[The same is true concerning any defenses issued by the defendant's side.]

The term "preponderance of the evidence" does not mean that the proof must produce absolute or mathematical certainty, and it does not mean proof beyond a reasonable doubt as is required in criminal cases.

Whether there is a preponderance of the evidence depends on the quality, and not the quantity, of evidence. In other words, merely having a greater number of witnesses or documents bearing on a certain version of the facts does not necessarily constitute a preponderance of the evidence.

If you believe that the evidence is evenly balanced, on an issue the plaintiff had to prove, then the plaintiff has not carried the burden of proof and your finding on that issue must be for thedefendant. [If you believe that the evidence is evenly balanced on an issue the defendant had to prove, then the defendant has not carried the burden of proof and your finding on that issue must be for the plaintiff.]

Source: Standardized Civil Jury Instructions for the District of Columbia

**Defendant:** *Objection.* This instruction will likely lead to confusion.  Further it implies that defendant has an equal burden of proof as the plaintiff.  With agreement on the edits, no objection.

**Standard Instruction 2-9: Evidence Produced by Adversary**

In determining whether any fact has been proved by a preponderance of the evidence, you should consider all the evidence bearing upon that fact, regardless of who produced it. A party is

entitled to benefit from all evidence that favors her whether she produced it or her adversary produced it.

**Defendant:** *Objection*.  The instruction should be as gender and party neutral as possible.

**Standard Instruction 2-10: Direct and Circumstantial Evidence**
There are two types of evidence: direct and circumstantial. Direct evidence is the direct proof of a fact, such as the testimony of an eyewitness. Circumstantial evidence is indirect evidence of a fact which is established or logically inferred from a chain of other facts or circumstances. For example, direct evidence of whether an animal was running in the snow might be the testimony of a person who actually saw the animal in the snow. Circumstantial evidence might be the testimony of a person who saw the tracks of the animal in the snow, rather than the animal itself.

You [must] consider both types of evidence equally. The law makes no distinction between the weight to be given either direct or circumstantial evidence. The law does not require a greater degree of certainty for circumstantial evidence than of direct evidence [and does not require a plaintiff to prove his or her case with direct evidence or a defendant to prove its defenses with direct evidence]. You should weigh all the evidence in the case, both direct and circumstantial, and find the facts in accordance with that evidence.
Source: Standardized Civil Jury Instructions for the District of Columbia
Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-100 (2003)

**Defendant***: Objection*. This instruction will likely lead to confusion.  Further it implies that defendant has an equal burden of proof as the plaintiff.

**Standard Instruction 3-2: Failure to Produce Stronger Available Evidence**

If a party to this case failed to produce relevant evidence which was peculiarly available to that party, and that party did not sufficiently explain why it was not produced, then you may infer that the evidence would have been unfavorable to that party.

Source: Standardized Civil Jury Instructions for the District of Columbia

**Defendant:** *Objection*.  Defendant's General Instruction number 16 more accurately reflects the point of this instruction. Specifically, "stronger" vs. weaker evidence may confuse the jury as to what evidence it should consider to make a decision.

**Standard Instruction 3-8: Impeachment by Prior Inconsistent Statement**
The testimony of a witness may be discredited or impeached by showing that he or she has
previously made statements which are inconsistent with his or her present courtroom testimony.
It is for you to decide whether a witness made a statement on an earlier occasion and whether it
was in fact inconsistent with the witness's testimony in court here.

If a witness at trial has been confronted with a prior statement which that witness made,
and that prior statement is inconsistent with his testimony here in court, then you may consider
the prior statement when you assess the truthfulness of the testimony he or she gave in court.
If the witness made the prior inconsistent statement under oath subject to the penalty of
perjury, then you may also treat that prior statement as evidence in this case – that is, you may
treat what the witness said in that prior statement as evidence like any other evidence in this case.
If the witness was not under oath [or] subject to the penalty of perjury when he or she made the
statement, then you may not treat the prior statement as evidence of the facts in the statement.

You may consider the statement only to evaluate the witness's credibility, that is, you may use
the prior statement only to determine whether to believe the witness's present testimony in court.
If you believe that any witness has been discredited or impeached, then you should give
his or her testimony the weight, if any, that you judge it is fairly entitled to receive.
Source: Standardized Civil Jury Instructions for the District of Columbia

**Defendant:** ***Objection.*** The instruction should be as gender and party neutral as possible.

**PLAINTIFF'S PROPOSED NON-STANDARD PRELIMINARY INSTRUCTIONS
(TO BE GIVEN AT THE START OF TRIAL)**

MEMBERS OF THE JURY:

We are about to begin the trial of the case you heard about during the jury selection and I am going to give you some preliminary instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.  I will decide all questions of law that arise during the trial.  Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply.  By your verdict, you will decide disputed issues of fact and, if you find for Ms. Makray and only if you find for Ms. Makray, you will also decide damages.

During the trial you will hear me use a few terms that you may or may not have heard before.  Let me briefly explain some of the most common to you. The party who sues is called the plaintiff.  In this action, the plaintiff is Laura Makray.  The party being sued is called the defendant.  In this case, the nominal defendant is the Department of Labor, but the actions of defendant that are at issue were taken by one or more members of the Office of Audit of its Inspector General's Office.  For ease of reference, we will refer to the defendant interchangeably with terms like the IG's Office, the Office of Inspector General, OIG, or the Office of Audit or OA.

You will sometimes hear me refer to "counsel." "Counsel" is another way of saying "lawyer" or "attorney."  I will refer to myself as the "Court."

When I "sustain" an objection, I am excluding that evidence from this trial for a good reason.  When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.

When I say "admitted into evidence" or "received in to evidence," I mean that this particular statement or particular exhibit may be considered by you in making the decisions you

must make at the end of the case.  The Court reviewed some of the evidence before trial and already found that it is admissible.

Every case places what are called burdens of proof on one party or on both parties.  This is a civil case and the burden of proof is a preponderance of the evidence, which means that you will be called to decide if the evidence proves a fact that is more likely to have happened than not happened.  I will instruct you more at the end of the trial about what a preponderance of the evidence means and what burdens of proof are.  For now, keep in mind this is not a criminal case and what you may have heard of as proof beyond a reasonable doubt does not apply here.

Because you are the exclusive judges of the facts of this case, you should give careful attention to the testimony and evidence presented.  Keep in mind that I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses.

During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' arguments, and my instructions to you on the law.

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the jury room.  No one will read your notes.  They will be destroyed at the conclusion of the case.

While the trial is in progress, do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, blog, website, tweet, posting on Face Book, or by any other use of the internet.  You must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, and you must not be exposed to any other information about the case or to the issues it

involves during the course of your jury duty.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, friends and your employer, although if asked or required you may notify your family, friends and your employer that you have been selected as a juror in the case.  But, if you are asked or approached in any way about your jury service or anything in the case, you must respond that you have been ordered not to discuss the matter and to report the contact to the Court.

The lawyers are not allowed to speak with you for any purpose during this case outside of the courtroom, nor are any of the individuals working for or with them.  When you see the attorneys or these other individuals at a recess or pass them in the halls and they do not speak to you or turn away, they are not being rude; they are simply following the rules.

From time-to-time during the trial, I may make rulings on objections or motions made by the lawyers.  It is a lawyer's duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible.  You should not be unfair or partial against a lawyer or the lawyer's client because the lawyer has made objections.  If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question.  You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. I do not favor one side or the other.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure.  Sometimes, you may be excused from the courtroom during these discussions.  The purpose of these conferences is not to keep relevant information from you but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.  I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the

case or of what your verdict should be.

I will try to limit these interruptions as much as possible and will keep the case on schedule in accordance with procedures set by law. Please understand that while you are waiting, we are working. Of course, we will do what we can to keep the number and length of these conferences to a minimum.

If it becomes necessary during your deliberations to communicate with the Court, you must send a note by the Marshal or the Deputy Clerk, signed by your foreperson, or by one or more members of the jury. No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing; and the Court will never communicate with any member of the jury on any subject touching the merits of the case other than in writing or orally here in open Court.

Bear in mind also that you are never to reveal to any person – not even the Court – how the jury stands, numerically or otherwise, on the questions that you are to decide, until after you have reached a unanimous verdict.

Source:  West <u>Federal Jury Practice and Instructions</u>, Vol. 3 § 101.01
<u>Stepney v. Perez</u>, Civ. Action No. 11-1480 (BJR) Preliminary Jury Instructions

**PLAINTIFF'S PROPOSED NON-STANDARD INSTRUCTIONS (TO BE GIVEN AFTER CLOSING ARGUMENT) NON-STANDARD INSTRUCTION: FINAL INSTRUCTIONS (WITH  DEFENDANT OBJECTIONS)**

Members of the jury, the time has now come when all the evidence is in and you have heard the opening and closing arguments of the lawyers.  It is my duty and responsibility to give you instructions as to the law applicable to the evidence so that your verdict will be true and just.  It is your duty as jurors to follow the law as I give it to you and to apply that law in this case as you find the facts from the evidence.  It is your sworn duty to base your verdict upon the law given in these instructions and upon the evidence that has been admitted in this case.

I will instruct you about the applicable general principles of the law, give you specific instructions that apply to the claim [and defenses] in this case, and instruct you on how to go about your deliberations.


Source:  Elion v. Jackson, C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 1).

**Non-Standard Instruction:  The Statute**

This case arises under Title VII of the Civil Rights Act of 1964, a federal law which prohibits employers, including the federal government and its agencies, from discriminating against their employees.

In specific terms, Title VII provides that "all personnel actions affecting employees shall be made free from any discrimination based on race, color, religion, sex, or national origin."  Like every employer, the federal government is prohibited from discriminating against its employees because of their race, color, religion, sex, or national origin.  Not being selected for promotion is among the "personnel actions" covered by Title VII.

In this case, Ms. Makray claims that defendant discriminated against her because she is a woman when it did not select her for promotion to the position of Director of the Office of Quality Assurance in January of 2011, and instead selected a man, Melvin Reid.  It is not incumbent upon Ms. Makray to prove by a preponderance of the evidence that the sole reason why defendant did not select her was discrimination.

Source:   42 U.S.C. § 2000e-16(a), (c) (incorporating 42 U.S.C. § 2000e-2); <u>Ponce v. Billington</u>, 679 F.3d 840, 845=47 (D.C. Cir. 2012); <u>Elion v. Jackson</u>, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 41-42); <u>Caudle v. District of Columbia</u>, Jury Instructions Civil Action No. 08-0205 (BJR).

**Defendant: Objection.  Misstates the burden in a single motive matter.   *See Ponce v. Billington*, 679 F.3d 840, 845 (D.C.Cir.2012) ("Even though we have described but-for and mixed-motive cases as 'alternative ways of establishing liability, a plaintiff may proceed under both theories simultaneously." (citations omitted));** *see also* **
*Nuskey v. Hochberg*, 730 F.Supp.2d 1, 3 (D.D.C.2010). However, the D.C. Circuit has cautioned that "at some point [the plaintiff] must place the employer and court on notice as to the theory or theories under which he intends to proceed." *Ponce,* 679 F.3d at 845 (citing *Ginger v. District of Columbia*, 527 F.3d 1340, 1345 (D.C.Cir.2008)).**

**Non-Standard Jury Instruction:  Definition of Disparate Treatment**

The discrimination that Ms. Makray contends that defendant engaged in is known as disparate treatment.  In order to prevail on her claim of discrimination, Ms. Makray must prove by a preponderance of the evidence that defendant treated her less favorably in selecting the OAQA Director because she is a woman; or that Mr. Reid was treated more favorably in selecting him as OAQA Director because he is a member of a different group protected under Title VII.

Source:   International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 (1977); Fisher v. University of Texas, ___ U.S ___, 131 S.Ct. 2311 (2012); Schuette v. Coalition to Defend Affirmative Action, 134 U.S. 1623 (2013); Grutter v. Bollinger, 539 U.S. 306, 326-27 (2004); Regents of University of California v. Bakke, 438 U.S. 265, 294-300 (1978)

**Defendant: Objection.  Confusing and not applicable.**

**Non-Standard Instruction: Elements of Plaintiff's Claim of Discrimination**

I will now instruct you more specifically on the elements of plaintiff's claim of discrimination.

The parties have stipulated to the facts that Ms. Makray is a woman; that she applied for promotion to the position of Director of the Office of Quality Assurance in December of 2010 when defendant posted a Vacancy Announcement; and that in January of 2011, defendant selected a man, Melvin Reid, for the position.

The issue that remains for you to decide is whether Ms. Makray has proven by a preponderance of the evidence that defendant discriminated against her because she was a woman when it did not select her and instead selected Mr. Reid.

If you conclude that Ms. Makray did carry this burden of proof, you are also to award compensatory damages to her.

If you conclude that Ms. Makray did not carry this burden of proof, you are to find for defendant and not make any award of compensatory damages to her.

Source:  Brown v. Brody, 199 F.3d 446, 452, 456-57 (D.C. Cir. 1999) (citing Burlington Industries Inc. v. Ellerth, 524 U.S. 742 (1999)).

### Non-Standard Instruction:  Discrimination

Ms. Makray does not need to prove by a preponderance of the evidence that defendant discriminated against her solely because she is because she is a woman,  Rather, she needs to prove that defendant's discrimination against her was the determinative factor in her non-selection even if there were one or multiple other causes of that decision.

**Defendant: Objection. Not an accurate statement of the law for single motive claim.  Ponce v. Billington, 679 F.3d 840, 845 (D.C. Cir.2012).**

Source:  42 U.S.C. §§ 2000e-16, e-2(a); Ponce v. Billington, 679 F.3d 840, 845 (D.C. Cir. 2012).

**Non-Standard Instruction:  Proof of Intent**

Ms. Makray is not required to produce direct evidence of defendant's intent to discriminate. She may prove her claims with circumstantial evidence.  The law makes no distinction direct and circumstantial evidence and both are equally probative.

The law does not require Ms. Makray to offer any particular type or types of circumstantial evidence to prove defendant's intent to discriminate against her.  Examples of circumstantial evidence from which you could infer, but do not have to infer, discrimination or retaliation could be that defendant's explanation is "unworthy of credence;" that defendant discriminated against women other than Ms. Makray; or that defendant afforded better treatment to other employees who are men.

You may infer, but do not have to infer, from such evidence that defendant's intent was to discriminate against Ms. Makray.  As with all evidence in the case, what weight you give to this evidence, and what inferences you choose to draw, are entirely up to you.

Source:  Sprint v. Mendelsohn, 552 U.S. 379, 380-81 (2008); Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-100 (2003); Aka v. Washington Hospital Center, 156 F.3d 1284, 1293 (D.C. Cir. 1998) (en banc); Brady v. Sergeant at Arms, 520 F.3d 490, 495 & n.3 (D.C. Cir. 2008)); Czekalski v. Peters, 475 F.3d 360, 368 (D.C. Cir. 2007);

**Defendant Objection: Redundant of other instructions ( Plaintiff's No. 2-10; Defendant's No. 21)**

**Non-Standard Instruction: Business Judgment**

There will seldom be "eyewitness" testimony as to the employer's mental processes, although it is not your function to second-guess the wisdom of the employer's business decisions. Although employers may take subjective considerations into account in their employment decisions, you may infer discrimination, but do not have to infer it, from asserted reliance on subjective interview results. You may also infer, but do not have to infer, that defendant intended to discriminate against Ms. Makray by claiming to have misjudged her qualifications although with nothing more, this does not provide a basis for finding for Ms. Makray. It is your function, as I have said, to determine whether defendant discriminated against Ms. Makray because of her sex. As I instructed you earlier, I have taken judicial notice of a federal law that prohibits the federal government from making employment decisions based on pre-selection and you are to presume during your deliberations that the officials of defendant involved in selecting the Director of OAQA knew of this prohibition and observed it.

Source: United States Postal Service v. Aikens, 460 U.S. 711, 716 (1983); Burdine v. Texas Dept. of Community Affairs, 450 U.S. 248, 259 (2000); Aka v. Washington Hospital Center, 156 F.3d 1284, 1298 (D.C. Cir. 1998) (en banc); Ponce v. Billington, 679 F.3d 840, 845-47 (D.C.Cir. 2012); Fishbach v. District of Columbia Dept. of Corrections, 86 F.3d 1180, 1183-84 (D.C. Cir. 1996; 5 U.S.C. §2302(b)(12)) (incorporating 5 U.S.C. §2301(b); Special Counsel v. Lee and Beatrez, 114 M.S.P.R. 57 (2010); West Federal Jury Practice and Instructions, Vol. 3C, §171.75; Elion v. Jackson, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 61).

**Defendant's Objection**:  Misstatement of the law concerning Title VII.  *Kolstad v. Am. Dental Ass'n,* 139 F.3d 958, 969 (D.C. Cir. 1998) ("pre-selection by itself is neither unusual nor illegal, much less egregiously wrongful"; "evidence of preselection is relevant only insofar as it logically supports an inference of discriminatory intent"), *vacated on other grounds by* 527 U.S. 526 (1999); *Tabron v. Johnson*, 21 F. Supp. 3d 84 (D.D.C. 2014) ("[P]laintiff has failed to

produce any actual evidence that Reyes's 'pre-selection' was in any way motivated by racial discrimination.  Indeed, mere departure from established hiring practices does not equate to evidence of illegal racial discrimination."); "Even if there ha[s] been favoritism in the selection process . . . '[p]reselection . . . does not violate Title VII when such preselection is based on the qualifications of the party and not on some basis prohibited by Title VII.'"  *Nyunt v. Tomlinson,* 543 F. Supp. 2d 25, 39 (D.D.C. 2008) (citation omitted); *Arnold v. Salazar*, 970 F. Supp. 2d 1, 8 (D.D.C. 2013) (pre-selection "not actionable" under Title VII);, 920 F. Supp. 2d 73, 83 (D.D.C. 2013) (pre-selection not a Title VII violation absent evidence that it "was motivated by a discriminatory animus).

**Non-Standard Instruction:  Inferences**

During the trial and in these instructions you have heard the Court and the attorneys use the term "inference."  The lawyers may have asked you to "infer," on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.  An inference is a deduction or conclusion from which you, the jury, are permitted to draw – but are not required to draw –from the facts which have been established by either direct evidence or circumstantial evidence.  In drawing inferences, you should exercise your common sense.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence.  The plaintiff may ask you to draw one set of inferences, while the defense may ask you to draw another.  It is for you and you alone to decide what inferences to draw if any.

So, while you are considering the evidence presented to you, you are permitted to draw from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

Examples of inferences that you might draw, but that you would not be required to draw, are as follows:

If you were outside and saw the leaves of the trees wet and the sky cloudy, you could infer that it had been raining that day.

If you were inside during the day and saw a man or woman entering the courtroom with a wet overcoat and shaking his or her umbrella, you could infer that it had been raining outside not long ago.

If you saw that same man or woman putting  on a wet coat and carrying a wet umbrella as he or she was leaving the courtroom, you could not infer what the weather would be outside three or four hours later.

Source:  <u>Modern Federal Jury Instructions (Civil Instructions</u>), Vol. 4, No. 75-1 (2001); <u>Elion v. Jackson</u>, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 18-21).

**Non-Standard Instruction – Adverse Inference**

With my previous instruction about Judicial Notice, I specifically advised you that the Court was taking judicial notice of regulations of the Equal Employment Opportunity Commission and the U.S. Office of Personnel Management that defendant was required to preserve the notes of the members of the panel who interviewed candidates for the Director of OAQA. The evidence was undisputed that Mr. Yarbrough did not preserve his notes.

Defendant's failure to preserve Mr. Yarbrough's notes was a violation of regulations of the EEOC and OPM, two agencies of the federal government responsible for the preservation of employment records and records relevant to EEO complaints. Defendant's failure to do so permits you to infer, but does not require you to infer, that his notes contained information that was favorable to Ms. Makray and how she interviewed. That failure also permits you to infer, but does not require you to infer, that defendant discriminated against Ms. Makray and find in her favor. You may make these inferences whether or not you conclude that defendant's failure to preserve Mr. Yarbrough's interview notes was intentional.

Source: Talavera v. Shah, 638 F.3d 303, 311-12 (D.C. Cir. 2011); 29 C.F.R. §1602.14; 5 C.F.R. §335.103(b)(5) (2002).

**Defendant: Objection. See objection concerning Plaintiff's "Judicial Notice" instruction.**

**Non-Standard Instruction: Agency/Multiple Actors**

The defendant is a government agency. It can only act through individuals as its agents or employees. A government agency is responsible for the acts of its employees and agents, and an employer is liable for discriminating if only one of individual in a non-promotion discriminated. To prevail on her claims, Ms. Makray has to prove by a preponderance of the evidence that one of the individuals involved in not promoting her to Director of OAQA intended to discriminate against her because she is a woman and that there is a relation between their discrimination and her non-selection that is not too remote, purely contingent, or indirect. This is what is known as proximate cause.

Source: Staub v. Proctor Hosp., 131 S. Ct. 1186, 1192 (2011); Griffin v. Washington Convention Ctr., 142 F.3d 1308, 1312 (D.C. Cir. 1998); Rattigan v. Holder, Jury Instructions, Civ. Acton. No. 04-1009 (ESH) (ECF #111 at 28); Standardized Jury Instructions for the District of Columbia, 4-5; Elion v. Jackson, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 68-69).

**Defendant: No Objection**

**Non-Standard Instruction: Multiple Actors and Proximate Cause**

Ms. Makray does not need to prove that each individual who played a role intended to discriminate against her, nor is she required to prove that any one individual in particular discriminated against her. Neither does she need to prove that any of the HR personnel involved in the advertisement or selection processes for the OAQA Director discriminated against her. The fact that the individual who made the final decision to select Mr. Reid did so without intent to discriminate against Ms. Makray does not mean that the discriminatory intent of an individual who acted earlier in the selection process was not the proximate cause of her nonselection.

The final decisionmaker's exercise of judgment is also a proximate cause of the employment decision, but it is common for injuries to have multiple proximate causes. Nor can the ultimate decisionmaker's judgment be deemed a superseding cause of the harm. A cause can be thought superseding only if it is a cause of independent origin that was not foreseeable.

Source: Staub v. Proctor Hosp., 131 S. Ct. 1186, 1192 (2011) (citing and quoting; HemiGroup, LLC v. City of New York, 559 U.S. ____, 130 S.Ct. 983, 989, (2010); Sosa v. Alvarez-Machain, 542 U.S. 692, 704, 718 (2004); Exxon Co., U.S.A. v. Sofec, Inc., 517 U.S. 830, 837, 116 S.Ct. 1813, 135 L.Ed.2d 113 (1996)); Griffin v. Washington Convention Ctr., 142 F.3d 1308, 1312 (D.C. Cir. 1998); Rattigan v. Holder, Jury Instructions, Civ. Acton. No. 04-1009 (ESH) (ECF #111 at 28); Standardized Jury Instructions for the District of Columbia, 4-5; Elion v. Jackson, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 68-69).

**Defendant: Objection. Confusing and ambiguous**.

**Non-Standard Instruction: Damages**

I will now give you a series of instructions about damages. You should not consider the fact that I am giving you this instruction as suggesting any view of mine as to which party is entitled to your verdict in this case, or that I think you should award any damages. Those decisions are entirely for you to make. I am giving you these instructions solely for your guidance, in the event that you find in favor of plaintiff and against defendant.

If you conclude that Ms. Makray proved by a preponderance of the evidence, in that event and only in that event, you are also to award compensatory damages to her. If you conclude that Ms. Makray did not carry this burden of proof, you are to find for defendant and not make any award of compensatory damages.

Source: 42 U.S.C. §1981a(a)(1).
Source: West Federal Jury Practice and Instructions, Vol. 3 § 106.02; Elion v. Jackson,
Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 43).

**Defendant: No Objection.**

**Non-Standard Instruction: Compensatory Damages**

Compensatory damages are those damages that comprise fair compensation for a plaintiff when he or she has been discriminated against. If you find in favor of plaintiff, then you must award plaintiff those monetary damages you find by a preponderance of the evidence will fairly and reasonably compensate her for any injuries or damages she sustained that were a proximate result of defendant's discrimination.

Compensatory damages may include compensation for any emotional pain, suffering, inconvenience, mental anguish, emotional injury or other emotional harm, loss of seniority and exposure in the office, and/or future career loss,. Any damages you award to Ms. Makray must include some compensation for the violation of her civil rights, even if it is only nominal.

No evidence of the monetary value of compensatory damages has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

In determining the amount of compensatory damages that you decide to award, you should be guided by common sense. You must use sound judgment, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, conjecture, speculation, guess work or punishment. On the other hand, the law does not require that plaintiff prove the amount of damages with mathematical precision. The damages that you award must be fair compensation, no more and no less.

Your award of damages must not include any amounts for lost pay or benefits or attorney fees. These are for the Court to decide and award, as is a promotion.

Source: Pollard v. E.I. DuPont DeNemours & Co., 532 U.S. 843, 849 (2001); Martini v. Federal National Mortgage Ass'n, 178 F.3d 1336, 1350 (D.C. Cir. 1999); Carey v. Piphus, 435 U.S. 247

(1978); Standardized Jury Instructions for the District of Columbia, 12-1, 2, 3; Modern Federal Jury Instructions No. 77-3; West Federal Jury Practice and Instructions, Vol. 3C,§§171.90, 171.92 (5th ed.); Caudle v. District of Columbia, Jury Instructions Civil Action No. 08-0205 (BJR); Elion v. Jackson, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at44-46).

**Defendant: Objection. Confusing and ambiguous**

**Non-Standard Instruction: Juror's Notes**

During the trial, I have permitted those jurors who wanted to take notes to do so. You may take your notes with you to the jury room and use them during your deliberations if you wish. As I told you at the beginning of the trial, your notes are only intended to be an aid to your memory and should not take precedence over your own independent recollection. Those jurors who have not taken notes should rely on their own memory of the evidence and should not be influenced by the fact that another juror has taken notes, since the notes are only for the notetaker's own personal use in assisting his or her memory of the evidence.

At the end of your deliberations, please tear out from your notebooks any notes you have made and give them to the foreperson. The Clerk will collect your notebooks and pencils when you return to the courtroom, and I will ask the foreperson to give me your notes when the verdict is returned. I will destroy your notes immediately after the trial and no one, including myself, will look at them.

Source: West Federal Jury Practice and Instructions, Vol. 3, §101.13; Caudle v. District of Columbia, Jury Instructions Civil Action No. 08-0205 (BJR); Rattigan v. Holder, Jury Instructions C.A. No. 04-2009 (D.D.C.) (ESH) (ECF #111 at 34).

**Defendant: No Objection**

**Non-Standard Instruction: Unanimous Verdict**

   The verdict you reach must represent the considered judgment of each juror. In order to

reach a verdict, each juror must agree to the verdict. The verdict you reach must be unanimous.

Source: Rattigan v. Holder, Jury Instructions C.A. No. 04-2009 (D.D.C.) (ESH) (ECF
#111 at 37);

**Defendant: No Objection**

**Non-Standard Instruction: Verdict Form**

A Verdict form has been prepared for you to use. You will take this form to the jury room. You will note that the verdict form contains more than one question. The answer to each question must be the unanimous answer of the jury. Your foreperson will write the unanimous verdict answer of the jury in the spaces provided.

When you have reached unanimous agreement on your verdict, you will have your foreperson fill in, date, and sign the form which sets forth the verdict upon which you unanimously agree and notify the Marshal or Courtroom Deputy that you have reached a unanimous verdict.

Source: West Federal Jury Practice and Instructions, Vol. 3, §106.04; Elion v. Jackson, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 55).

**Defendant: No Objection**

**Non-Standard Instruction: Communications Between Court and Jury During Jury Deliberations**

If it becomes necessary during your deliberations to communicate with the Court, you must send a note by the Marshal or the Deputy Clerk, signed by your foreperson, or by one or more members of the jury. No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing; and the Court will never communicate with any member of the jury on any subject touching the merits of the case other than in writing or orally here in open Court. Bear in mind also that you are never to reveal to any person – not even the Court – how the jury stands, numerically or otherwise, on the questions that you are to decide, until after you have reached a unanimous verdict.

Source: Rattigan v. Holder, Jury Instructions C.A. No. 04-2009 (D.D.C.) (ESH) (ECF #111 at 35); West Federal Jury Practice and Instructions, Vol. 3, §106.08; Elion v. Jackson, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 53).

**Defendant: No Objection**

**Non-Standard Instruction: Jury Organization and Deliberations**

Now that you have heard the evidence, the arguments of counsel, and my instructions, you will retire to the Jury Room. First, select from among your number a Foreperson in any manner you choose. That person has two primary responsibilities:

1. To preside over the jury deliberations and keep the jury deliberations moving in a rational fashion in order to arrive at a fair verdict based on the evidence and in the context of the Court's instructions on the law;

2. To be the primary contact between the jury and the Court during deliberations and to return the jury's verdict in open Court when the jury has arrived at a unanimous verdict.

All exhibits received in evidence will be sent to you at the outset of your deliberations.

You have as much time as you desire to deliberate and arrive at a fair verdict. No verdict should be arrived at because of the pressure of time. If today, after what I judge to be a reasonable time, you have not arrived at a verdict, I may bring you into Court, give you some instructions and send you home, to return tomorrow or the next business day to resume your deliberations. I may also excuse at the end of the day without having you return to the courtroom. You may also notify the Court that you wish to continue your deliberations.

Source: West Federal Jury Practice and Instructions, Vol. 3, §106.04; Elion v. Jackson, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 47); Caudle v. District of Columbia, Jury Instructions Civil Action No. 08-0205 (BJR).

**Defendant:  No Objection**

**DEFENDANT'S PROPOSED SPECIAL  JURY INSTRUCTIONS**

Defendant Thomas Perez, Secretary, U.S. Department of Labor ("Department of Labor Office of Inspector General"), respectfully submits these special jury instructions for trial in the matter to reflect the narrower issues now set to be tried in accordance with the rulings of the Court at the pretrial conference to be held on January 28, 2015.

## *PROPOSED SPECIAL INSTRUCTIONS*

**Proposed Special Instruction No. 1:**

**Elements of Claim for Discrimination (Pretext)**

Plaintiff, Ms. Makray has brought this case against the United States Department of Labor Office of Inspector General under Title VII of the Civil Rights Act of 1964, as amended.  The federal law makes it unlawful for an employer to discriminate against an employee with respect to the terms, conditions, or privileges of employment because of such individual's gender.

In this case, Ms. Makray claims that officials of the Department of Labor Office of Inspector General intentionally discriminated against her on the basis of her gender when, in January 2011, she was not selected for the GS-15 Director of Office of Audit Quality Assurance position and the position instead went to Melvin Reid, a male.  The Department of Labor Office of Inspector General denies these allegations.

To prove a claim of gender discrimination, Ms. Makray must prove by a preponderance of the evidence that she was not selected for the GS-15 position because of her gender.  In order to carry this burden of proof, Ms. Makray must prove that intentional discrimination on the basis of gender was the reason for her non selection.  That is, she must prove that, but for her gender, she would have been selected for the GS-15 Director of Office of Audit Quality Assurance position.

The Department of Labor Office of Inspector General is not required to prove that it did not intentionally discriminate against Ms. Makray.

It is not enough for Ms. Makray to show that a male was chosen for the position.  Likewise, Ms. Makray's own opinion or subjective belief or speculation that she was discriminated against, no matter how genuinely felt, is insufficient to support a claim of intentional discrimination.  On the contrary, Ms. Makray must prove that the Department of Labor Office of Inspector General intentionally made the decision not to select her because of her gender.

Discrimination is intentional if done voluntarily, deliberately, and willfully. Discriminatory intent may be proved either by direct evidence such as statements made by a person whose intent is at issue, or by circumstantial evidence from which you can infer a person's intent. Ms. Makray is not required to produce direct evidence of discrimination, such as statements admitting discrimination.  Intentional discrimination may be inferred from the existence of other facts.  Thus, in making a determination as to whether there was intentional discrimination in this case, you may consider any statement made or act done or omitted by a person whose intent is in issue as well as all other facts and circumstances that indicate his or her state of mind.  You may also infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

It is not your function to second-guess the wisdom of the business decision of the Department of Labor Office of Inspector General.  You cannot find intentional discrimination simply because you disagree with the selection decision or believe the decision to have been a poor decision, an unreasonable one, unfair, or a decision that you would not have made.  An employer has the right to choose among qualified candidates for any reason, whether good or bad, so long as the employer is not making the decision because of a candidate's gender.  However, you may

consider whether the Department of Labor Office of Inspector General's reason for its decision is merely a cover-up for intentional discrimination.

The Department of Labor Office of Inspector General asserts that it made the selection decision based on the candidates' performance during the interviews that were conducted for the position.  Ms. Makray, on the other hand, asserts that the stated reason of the Department of Labor Office of Inspector General for its action is a mere pretext or excuse to cover up gender discrimination.  In determining whether the Department of Labor Office of Inspector General's stated reason for its decision is genuine or a mask for intentional discrimination, you must examine the facts as they appeared to the individuals involved in the selection decision at the time the decisions were made.

If you believe the explanation of the Department of Labor Office of Inspector General for its action in not selecting Ms. Makray for the position, you must find for the Department of Labor Office of Inspector General.  If you disbelieve the Department of Labor Office of Inspector General's explanation, then you may, but need not, find that Ms. Makray proved intentional discrimination.

Ultimately, the question before you is whether Ms. Makray was not selected for the GS-15 Director of Office of Audit Quality Assurance position because of her gender.  Remember, ladies and gentlemen, that the burden of proof remains at all times on Ms. Makray to prove gender discrimination.  The Department of Labor Office of Inspector General is not required to prove that it did not intentionally discriminate.  It is Ms. Makray's ultimate burden to prove that it did.

**Authority:** *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 n.4, 524 (1993); *Davis v. State Univ. of N.Y.*, 802 F.2d 638, 641 (2d Cir. 1986); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981); *Brown v. Brody*, 199 F.3d 446, 458-59 (D.C. Cir. 1999) (citing *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)); *Hutchinson v. CIA*, 393 F.3d 226, 229 (D.C. Cir. 2005) (plaintiff's speculation does not create a genuine issue of material fact); *McNally v. Norton*, 498 F. Supp. 2d 167, 182 (D.D.C. 2007); *Montgomery v. Chao*, 495 F. Supp. 2d 2, 15-16 (D.D.C.

2007), *aff'd* 546 F.3d 703 (D.C. Cir. 2008); *Ponce v. Billington,* 679 F.3d 840, 846 (D.C. Cir. 2012) (addressing "but for" standard in Title VII jury instructions); *Fischbach v. D.C. Dep't of Corr.,* 86 F.3d 1180, 1183-84 (D.C. Cir. 1996) (employer has discretion to choose among qualified candidates); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-151 (2000); *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284 (D.C. Cir. 1998); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *McKinney v. Dole*, 765 F.2d 1129, 1139 (D.C. Cir. 1985); *Okpala v. District of Columbia*, 1:09-cv-01948; *Youssef v. FBI*, 1:03-cv-01551.

**Proposed Special Instruction No. 2:**

**No Duty of Special Treatment**

The law is not intended as a vehicle for judicial review of employment decisions that are not the result of discrimination. Although the law requires that an employer reach employment decisions without discriminating, it does not place an affirmative duty upon an employer to accord special treatment to any employee or category of employees. An employer has the right to make business decisions, for good, bad, or no reason at all, as long as they do not constitute discrimination. The law does not expose an employer to liability merely because the employer may have misjudged an employee's job performance or qualifications or made a personnel decision that was unwise or ill-advised. It is not your function in this case to second-guess the wisdom of any employment action that affected Ms. Makray. Thus, even if you personally disagree with the actions that were taken or believe that they were unreasonable, if you find that discrimination was not the cause of the actions, then you must return a verdict in defendant's favor.

*Authority: Bowden v. Clough*, 658 F. Supp. 2d 61, 90 (D.D.C. 2009) ("It must be emphasized that the law does not dictate which candidate an employer should choose when making promotion decisions. Indeed, an employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria."); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981) ("Title VII, however, does not demand that an employer give preferential treatment to minorities or women. The statute was not intended to 'diminish traditional management prerogatives.' . . . Rather, the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria.") (citations omitted); *Davis v. State University of New York*, 802 F.2d 638, 641 (2d Cir. 1986) ("The employer need not prove that the person promoted had superior objective qualifications, or that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory."); *Banks v. Dist. of Columbia*, 498 F. Supp. 2d 228, 236 (D.D.C. 2007) ("Every poor decision and instance of unfair treatment by an employer does not amount to *per se* discrimination.").

**Defendant's Proposed Specialized Jury Instruction No. 3**

**Pre-selection Is Not Discrimination**

As you have been instructed, Title VII would prohibit Ms. Makray's non-selection for the Directorship of Office of Audit Quality Assurance if Ms. Makray demonstrates by a preponderance of the evidence that but for her gender she would have been selected as the Director of Office of Audit Quality Assurance.  A promotion based on "pre-selection" may seem unfair, but it is not made unlawful by Title VII unless discrimination was also the motivating factor. In other words, even if you believe Ms. Makray's claim that Mr. Raponi pre-selected Mr. Reid for promotion to Director of Office of Audit Quality Assurance, you must still find for the defendant unless the plaintiff also shows by a preponderance of the evidence that gender discrimination against Ms. Makray was the motivating factor in the decision not to select her.

*Oliver-Simon v. Nicholson*, 384 F.Supp.2d 298, 310 (D.D.C. 2005), *citing Housley v. Boeing Co.*, 177 F.Supp.2d 1209, 1217 (D.Kan. 2001) (stating that "[f]avoritism based on criteria other than gender or age does not violate the federal anti-discrimination laws and does not raise an inference of discrimination).

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S PROPOSED SPECIAL INSTRUCTIONS**

**General Objection**

Plaintiff's separate Proposed Non-Standard Instructions accurately capsulize relevant provisions of Title VII; are well-tailored to employment cases; and in almost all respects have been delivered by other District Judges in this jurisdiction.  E.g., Elion v. Jackson, C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108); Caudle v. District of Columbia, C.A No. 08-0205 (BJR); Perry v. Donovan, C.A. No. 07-1010 (RCL) (ECF #125); Rattigan v. Holder, Civ. Acton. No. 04-1009 (ESH) (ECF #111 at 28).  They do so in keeping with the core purpose of jury instructions, which are to define the law and elements of claims neutrally and without argument, in terms accessible to lay jurors, and in keeping with stipulated facts and those disputed facts that are supported by admissible evidence from which rational inferences may be drawn.  Christopher v. Cutter Labs, 53 F.3d 1184, 1194 (11th Cir. 1995); S.A. Healy Co. v. Milwaukee Metro., 50 F.3d 476, 480 (7th Cir. 1995); Mayall v. Peabody Coal Co., 7 F.3d 570, 574 (7th Cir. 1993).

Defendant's proposed non-standard instructions deviate from permissible jury instructions because in multiple respects they inaccurate, argumentative, and erroneous.  In addition, they impermissibly include legal terms of art like "pretext."  E.g., Gehring v. Case Corp., 43 F.3d 340, 343 (7th Cir. 1994), cert. denied, 515 U.S. 1159 (1995); Loeb v. Textron, Inc., 600 F.2d 1003, 1016 (1st Cir. 1979).  The only issue before a jury is whether an employer discriminated or retaliated.  United States Postal Service v. Aikens, 460 U.S. 711, 713 (1983); Brady v. Office of Sgt. at Arms, 20 F.3d 490, 494 (D.C. Cir. 2008); Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003).

Plaintiff respectfully submits that, in conjunction with the Standardized Civil Jury Instructions she has proposed, plaintiff's Proposed Non-Standard Instructions will properly

instruct the jury on all of the elements and legal principles that will be before it. For these reasons and the specific objections raised below, plaintiff respectfully submits that none of defendant's special closing instructions should be delivered to the jury. [12]

---

[12] The Court's Standing Order provided that a party's proposed "jury instructions section should be formatted so that each individual jury instruction begins on a new page," with "the adversary party's specific objections noted below each disputed instruction." ECF # 2 at 6. Despite being requested, defendant failed to do so. Defendant's first proposed special instruction contains at least ten separate instructions ranging, for example, from incorrect and incomplete statements about the elements of a case of disparate treatment, inferences that can be drawn from harsh or unexplained employment decisions and ones reached in contravention of a defendant's standard personnel practices, and the causation requirement in a case of disparate treatment Based on defendant's failure to comply with the Court's Standing Order, plaintiff respectfully submits that defendant's proposed therefore objects to defendant's proposed special instruction on this general ground. In light of the Court's Standing Order and the number of individual instructions in defendant's "four" proposed non-standard instructions, plaintiff respectfully reserves the right to expand upon her objections at the pre-trial conference and in charging conferences.

**Plaintiff's Objections to Defendant's Proposed Special Instruction No. 1**

The Statute:   The summary of Title VII contained in defendant's proposed special instruction no. 1 is incomplete and will leave jurors with the incorrect impression that Title VII only prohibits discrimination based on gender and that it provides special protection for federal employees rather than universal protection against discrimination by all employers.   In contrast, Plaintiff's Proposed Non-Standard Instruction No. 1 accurately sets forth the statute, its protections, and its coverage.

Source:  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16(a), (c) (incorporating 42 U.S.C. § 2000e-2); Elion v. Jackson, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 41-42); Caudle v. District of Columbia, Jury Instructions Civil Action No. 08-0205 (BJR).

See Plaintiff's Proposed Non-Standard Closing Instruction "The Statute."

<u>References to Discrimination at Issue</u>:        Plaintiff respectfully submits that in order to be consistent, all references in jury instructions, statements of claim, and elsewhere should state that Ms. Makray alleges that defendant discriminated against her because she is *a woman* rather than because of her sex or her gender.


<u>See</u> Plaintiff's Proposed Joint Statement of the Case and Plaintiff's Statement of Claims

<u>Defendant's Liability</u>: Ms. Makray claims that one or more officials of the Office of Audit discriminated against her in not selecting her as Director of OAQA, which is in keeping with the principle of law that defendant is liable even if only one official in the selection process discriminated against her.   Defendant's proposed instruction states that Ms. Makray "claims that officials of the Office of Inspector General" discriminated against her, which is a misstatement of Ms. Makray's claim and an erroneous statement of law about a defendant's liability when fewer than all of the management officials involved in one adverse employment engaged in discrimination.

Source:  <u>Staub v. Proctor Hosp.</u>, 131 S. Ct. 1186, 1192 (2011); <u>Griffin v. Washington Convention Ctr.</u>, 142 F.3d 1308, 1312 (D.C. Cir. 1998); <u>Rattigan v. Holder</u>, Jury Instructions, Civ. Acton. No. 04-1009 (ESH) (ECF #111 at 28); Standardized Jury Instructions for the District of Columbia, 4-5; <u>Elion v. Jackson</u>, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 68-69).

<u>See</u> Plaintiff's Proposed Non-Standard Closing Instructions "Agency/Multiple Actors" and "Multiple Actors and Proximate Cause."

<u>Determinative Factor for Discrimination</u>:    Ms. Makray only needs to prove that discrimination was the determinative factor in her non-selection even if there were one or multiple other causes of that decision.  She does not need to prove evidence that discrimination was "the reason" defendant discriminated against her, as defendant's proposed special instruction states.


Source:  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-16, e-2(a); <u>Ponce v. Billington</u>, 679 F.3d 840, 845 (D.C. Cir. 2012).

<u>See</u> Plaintiff's Proposed Non-Standard Closing Instruction "Discrimination."

<u>Use of Legal Terms of Art and Shorthand</u>:   Using shorthand legal terms of art, for example "pretext," in jury instructions is erroneous.   Jurors should be instructed about the issues in consistent, easily accessible lay terms.   Mr. Makray's burden is to prove by a preponderance of the evidence that discrimination was the determinative factor in not selecting her.   Use of the shorthand legal term "but for" in defendant's proposed instruction is improper and inconsistent with terms defendant uses elsewhere in this same instruction.   The issue before a jury is whether an employer discriminated.

Source:        <u>Gehring v. Case Corp.,</u> 43 F.3d 340, 343 (7th Cir. 1994), <u>cert</u>. <u>denied,</u> 515 U.S. 1159 (1995); <u>Loeb v. Textron, Inc.</u>, 600 F.2d 1003, 1016 (1st Cir. 1979); <u>Brady v. Office of Sgt. at Arms</u>, 20 F.3d 490, 494 (D.C. Cir. 2008); <u>Lathram v. Snow</u>, 336 F.3d 1085, 1088 (D.C. Cir. 2003).

<u>See</u> Plaintiff's Proposed Non-Standard Closing Instruction "Discrimination."

    <u>Argumentative Instructions/"Not Enough" That A Male Was Selected</u>:    Defendant's proposed special instruction that "[i]t is not enough for Ms. Makray to show that a male was chosen for the position" is argumentative and, as such, improper for inclusion in a jury instructions and it is erroneous by failing to equate favoritism to a candidate outside of an applicant's protected category is equivalent to discriminating against a candidate because of their membership in a different protected group.

    To be balanced, defendant's proposed instruction would have to include the following:

    The discrimination that Ms. Makray contends that defendant engaged in is known as disparate treatment.  "'Disparate treatment'" such as is alleged in the present case is the most easily understood type of discrimination.  The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin."  In order to prevail, Ms. Makray must prove by a preponderance of the evidence that defendant treated her less favorably in selecting the OAQA Director because she is a woman; or that Mr. Reid was treated more favorably in selecting him because he is a member of a different group protected under Title VII.

    Source:  <u>International Brotherhood of Teamsters v. United States</u>, 431 U.S. 324, 335, n.15 (1977); <u>Schuette v. Coalition to Defend Affirmative Action</u>, 134 U.S. 1623 (2013); <u>Grutter v. Bollinger</u>, 539 U.S. 306, 326-27 (2004); <u>Regents of University of California v. Bakke</u>, 438 U.S. 265, 294-300 (1978); <u>Christopher v. Cutter Labs</u>, 53 F.3d 1184, 1194 (11th Cir. 1995); <u>S.A. Healy Co. v. Milwaukee Metro.</u>, 50 F.3d 476, 480 (7th Cir. 1995); <u>Mayall v. Peabody Coal Co.</u>, 7 F.3d 570, 574 (7th Cir. 1993).

    <u>See</u> Plaintiff's Proposed Non-Standard Closing Instruction "Definition of Disparate Treatment."

<u>Disparate Treatment/Intent To Discriminate</u>:          Proof of intent in a claim of disparate treatment is that it be intentional, nothing more nothing less.  Defendant's proposed additions that discrimination is only actionable when it is done "voluntarily, deliberately *and* willfully" is misleading, by implying that there are three (and incorrect) elements to the intent needed to support a claim of disparate treatment, and erroneous, in the use of the terms deliberately and willfully. Where required, Congress has specified by statute that willfulness is an element of intent, as it did for example in the Fair Labor Standards Act.  29 U.S.C. §255.  There is no such requirement in Title VII.  Further, there is no exception in Title VII for discrimination that is reflexive.  Ms. Makray is not required to prove that defendant deliberately discriminated, which means by acting carefully and slowing, after weighing its decision and possibly in formal group discussion.  <u>E.g.</u> <u>www.merriam-webster.com/dictionary/deliberate</u>; Plaintiff's Non-Standard Special Instruction "Definition of Disparate Treatment" is accurate, complete and balanced and no further instruction should or need be given on the issue of intent.

Source:          <u>International Brotherhood of Teamsters v. United States</u>, 431 U.S. 324, 335 (1977); Fair Labor Standards Act, 29 U.S.C. §255.

<u>See</u> Plaintiff's Proposed Non-Standard Closing Instruction "Definition of Disparate Treatment."

<u>Statements Admitting Discrimination</u>:        There are numerous ways for a jury to find that an employer discriminated, one of which would be if the employer admitted to it.  There is no inference to drawn from the fact that an employer did not admit to discriminating, because there is nothing from "reason and common sense" that would "lead" a jury to infer anything a defendant's failure to admit liability.  Therefore, defendant's proposed instruction with suggests that the jury may infer something from the fact that one or more of the officials involved in the selection process did not admit to discriminating against Ms. Makray is impermissibly at odds with Standardized Civil Jury Instruction No. 2-3 for the District of Columbia.

Plaintiff respectfully submits that her Proposed Non-Standard Instructions are accurate, complete, and properly tailored to a case of disparate treatment.  If a further instruction on permissible inferences is to be delivered to the jury, plaintiff respectfully submits that the following instruction be used.

Circumstantial evidence is typically central in employment cases.  It "is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."  There are many types of circumstantial evidence from you may infer, but do not have to infer, that defendant discriminated against Ms. Makray.  Any of these types of evidence alone or in combination with others are sufficient for you to find that defendant discriminated against Ms. Makray:  a.) in one or more material ways, the reasons given by defendant for not selecting Ms. Makray or selecting Mr. Reid are not credible; b.) Ms. Makray's qualifications were superior to Mr. Reid's, defendant misstated Ms. Makray's or Mr. Reid's qualifications, or defendant misstated the qualifications needed for the Director of OAQA; c.) defendant gave and shifting explanations for not selecting Ms. Makray or for selecting Mr. Reid or came up with new explanations in this litigation; d.) defendant's discriminated against Ms. Makray before it passed her over as Director of OAQA; e.) the treatment defendant afforded

women in the Office of Audit other than Ms. Makray was less favorable than the treatment it gave

men; f.) defendant deviated from standard Office of Audit HR practices and policies in the

selection process or g.) the failure of one or more panel members to keep their notes of the

interviews of Ms. Makray and Mr. Reid.


       Source:       Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-100 (2003) (citing and quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147-48 (2000); Aka v. Washington Hospital Center, 156 F.3d 1284, 1293 (D.C. Cir. 1998) (en banc); Brady v. Sergeant at Arms, 520 F.3d 490, 495 & n.3 (D.C. Cir. 2008); Talavera v. Shah, 638 F.3d 303, 311-12 (D.C. Cir. 2011); Czekalski v. Peters, 475 F.3d 360, 368 (D.C. Cir. 2007); George v. Leavitt, 407 F. 3d 405, 412, 414 (D.C. Cir. 2005); Lathram v. Snow, 336 F.3d 1085, 1094 (D.C. Cir. 2003); 29 C.F.R. §1602.14; 5 C.F.R. §335.103(b)(5) (2002); Standardized Civil Jury Instruction No. 2-3 for the District of Columbia.

       See Plaintiff's Proposed Non-Standard Closing Instructions "Proof of Intent," "Inferences," and "Adverse Inference"

Proximate Cause:       Defendant will be liable to if one of the management officials involved in the OAQA Director selection process discriminated against Ms. Makray and proximately caused her to be passed over for promotion.   Proximate cause is not a permissive inference, as defendant's instruction proposed instruction provides, but a conclusive presumption.

Source:  Staub v. Proctor Hosp., 131 S. Ct. 1186, 1194 (2011);

See Plaintiff's Proposed Non-Standard Closing Instructions "Agency/Multiple Actors" and "Multiple Actors and Proximate Cause."

<u>Business Decision/Interviews</u>:      Defendant's proposed special instruction about an employer's business decisions is argumentative and erroneous.  A jury may infer, but does not to infer, that defendant discriminated against Ms. Makray by claiming to have misjudged her qualifications; from defendant's asserted reliance on subjective interview results; and based on missing interview notes.  Defendant misstates the undisputed record in claiming that it "made the decision on the candidates' performance during the interviews that were conducted for the position."  Defendant's proposed instructions to the jury that it must choose between finding whether defendant's decision was "genuine" as opposed to "a mask" is argumentative.  Defendant's proposed instruction also impermissibly suggests that defendant's prior history of discrimination against women is irrelevant and erroneously implies defendant cannot be found liable unless all the individuals involved in the decisional process intended to discriminate against Ms. Makray.

Source:  <u>Staub v. Proctor Hosp.</u>, 131 S. Ct. 1186, 1192 (2011); <u>United States Postal Service v. Aikens</u>, 460 U.S. 711, 716 (1983); <u>Burdine v. Texas Dept. of Community Affairs</u>, 450 U.S. 248, 259 (2000); <u>Talavera v. Shah,</u> 638 F.3d 303, 311-12 (D.C. Cir. 2011); <u>Aka v. Washington Hospital Center</u>, 156 F.3d 1284, 1298 (D.C. Cir. 1998) (<u>en banc</u>); <u>Ponce v. Billington</u>, 679 F.3d 840, 845-47 (D.C. Cir. 2012); <u>Fishbach v. District of Columbia Dept. of Corrections</u>, 86 F.3d 1180, 1183-84 (D.C. Cir. 1996); <u>Griffin v. Washington Convention Ctr.</u>, 142 F.3d 1308, 1312 (D.C. Cir. 1998); <u>Elion v. Jackson</u>, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 61). §335.103(b)(5) (2002); Standardized Civil Jury Instruction No. 2-3 for the District of Columbia.

<u>See</u> Plaintiff's Proposed Non-Standard Closing Instructions "Business Judgment" and "Adverse Inference."

<u>Defendant's Explanation</u>:      There are a number of officials who were involved in the selection process for the Director of OAQA and they have given different reasons at different times for the decision not to select Ms. Makray and to select Mr. Reid.  Defendant is liable if any one of them discriminated against Ms. Makray because she is a woman.  Defendant's instructions is argumentative and improper in stating that there is such a thing as one "explanation" for its actions and is erroneous because it is liable for all the discriminatory actions of all individuals involved in the selection process.

Source:   <u>Staub v. Proctor Hosp.</u>, 131 S. Ct. 1186, 1192 (2011); <u>Griffin v. Washington Convention Ctr.</u>, 142 F.3d 1308, 1312 (D.C. Cir. 1998).

<u>See</u> Plaintiff's Proposed Non-Standard Closing Instructions "Agency/Multiple Actors" and "Multiple Actors and Proximate Cause."

<u>Burden of Proof</u>:        The parties have agreed to the Court's delivery of D.C.

Standard Jury Instructions No. 2-8 "Burden of Proof."  Defendant's proposed additional

instruction is duplicative and, by improperly inserting the concept of an additional "ultimate

burden" is erroneous and would confuse the jury.


Source:  Standardized Civil Jury Instruction for the District of Columbia No. 2-8.

<u>Impermissible References to Summary Judgment Standards</u>:          The   Court's   Order denying summary judgment and the undisputed evidence in this case demonstrates that Ms. Makray had a well-grounded belief supported by declarations, admissions, and documents that defendant discriminated against her.  Therefore, an instruction that a verdict could not be returned for Ms. Makray based on standards for an award of summary against her, for example that Ms. Makray had nothing more than her "own opinion or subjective belief or speculation that she was discriminated against," would be impermissible.  It would also be impermissible to give an instruction to that effect because there is nothing in "reason and common sense" that could "lead" a jury to make any inferences such as these.

<u>Source</u>:          Minute Order of Nov. 25, 2014; <u>Brady v. Sergeant at Arms</u>, 520 F.3d 490, 495 & n.3 (D.C. Cir. 2008); Standardized Civil Jury Instruction No. 2-3 for the District of Columbia.

**<u>Objections to Defendant's Proposed Special Instruction No. 2</u>**

<u>Special Treatment</u>:      Plaintiff agrees with defendant that the Court should deliver a Non-Standard Closing Instruction called "No Duty Of Special Treatment."   Plaintiff respectfully submits, however, the defendant's proposed instruction on this subject is argumentative and one-sided.  Plaintiff respectfully submits that the following instruction is balanced and tailored to the facts of this case.

The law requires that an employer reach employment decisions without discriminating on the basis of sex, race, color, religion or national origin.  The law does not permit defendant to have passed over Ms. Makray as Director of OAQA because she is a woman, just as the law does not permit defendant to have selected Mr. Reid because he is African American.

Source:   <u>International Brotherhood of Teamsters v. United States</u>, 431 U.S. 324, 335 (1977); <u>Schuette v. Coalition to Defend Affirmative Action</u>, 134 U.S. 1623 (2013); <u>Grutter v. Bollinger</u>, 539 U.S. 306, 326-27 (2004); <u>Regents of University of California v. Bakke</u>, 438 U.S. 265, 294-300 (1978).

<u>See</u> Plaintiff's Proposed Non-Standard Closing Instruction "Definition of Disparate Treatment."

      <u>Business Judgment</u>:    All of this proposed instruction after the first two sentences is duplicative of the "Business Judgment" instruction that defendant proposed in its Specialized Instruction No. 1.  To reiterate, Defendant's proposed special instruction about an employer's business decisions is argumentative and erroneous.  A jury may infer, but does not to infer, that defendant discriminated against Ms. Makray by having misjudged her qualifications although with nothing more, this does not provide a basis for finding for Ms. Makray.  A jury may also infer discrimination from defendant's asserted reliance on subjective interview results and destruction of interview notes.  Defendant misstates the undisputed record in claiming that it "made the decision on the candidates' performance during the interviews that were conducted for the position."  Defendant's proposed instruction also impermissibly suggests that defendant's prior history of discrimination against women is irrelevant and erroneously implies defendant cannot be found liable unless all the individuals involved in the decisional process intended to discriminate against Ms. Makray.

      Source:  <u>Staub v. Proctor Hosp.</u>, 131 S. Ct. 1186, 1192 (2011); <u>United States Postal Service v. Aikens</u>, 460 U.S. 711, 716 (1983); <u>Burdine v. Texas Dept. of Community Affairs</u>, 450 U.S. 248, 259 (2000); <u>Aka v. Washington Hospital Center</u>, 156 F.3d 1284, 1298 (D.C. Cir. 1998) (<u>en banc</u>); <u>Ponce v. Billington</u>, 679 F.3d 840, 845-47 (D.C. Cir. 2012); <u>Fishbach v. District of Columbia Dept. of Corrections</u>, 86 F.3d 1180, 1183-84 (D.C. Cir. 1996); <u>Griffin v. Washington Convention Ctr.</u>, 142 F.3d 1308, 1312 (D.C. Cir. 1998); <u>Lathram v. Snow</u>, 336 F.3d 1085, 1094 (D.C. Cir. 2003); <u>Elion v. Jackson</u>, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 61).

      <u>See</u> Plaintiff's Proposed Non-Standard Closing Instruction "Business Judgment."

**<u>Objections to Defendant's Proposed Special Instruction No. 3</u>**

<u>Pre-Selection</u>: All of this proposed instruction is duplicative of the two "Business Judgment" instructions that defendant proposed in its Specialized Instruction Nos. 1 and 2. Defendant's proposed special instruction about an employer's business decisions is argumentative and erroneous.  A jury may infer, but does not to infer, that defendant discriminated against Ms. Makray by having misjudged her qualifications although with nothing more, this does not provide a basis for finding for Ms. Makray.  A jury may also infer discrimination from defendant's asserted reliance on subjective interview results and deviations from standard Office of Audit HR practices and policies in the selection process.  Defendant misstates the undisputed record in claiming that it "made the decision on the candidates' performance during the interviews that were conducted for the position."  Defendant's proposed instruction also impermissibly suggests that defendant's prior history of discrimination against women is irrelevant and erroneously implies defendant cannot be found liable unless Mr. Raponi engaged in discrimination against Ms. Makray.  Since plaintiff is not proceeding under 42 U.S.C. §2000e-2(m), Defendant's references to the motivating standard are erroneous and misleading.

Pre-selection is against the law and suggesting to the jury that it is not, or that violations of HR regulations required by statute, regulation, and practice are insufficient to support a finding against defendant, is erroneous.

Source:  <u>Staub v. Proctor Hosp.</u>, 131 S. Ct. 1186, 1192 (2011); <u>United States Postal Service v. Aikens</u>, 460 U.S. 711, 716 (1983); <u>Burdine v. Texas Dept. of Community Affairs</u>, 450 U.S. 248, 259 (2000); <u>Aka v. Washington Hospital Center</u>, 156 F.3d 1284, 1298 (D.C. Cir. 1998) (<u>en</u> <u>banc</u>); <u>Ponce v. Billington</u>, 679 F.3d 840, 845-47 (D.C. Cir. 2012); <u>Fishbach v. District of Columbia Dept. of Corrections</u>, 86 F.3d 1180, 1183-84 (D.C. Cir. 1996); <u>Griffin v. Washington Convention Ctr.</u>, 142 F.3d 1308, 1312 (D.C. Cir. 1998); 5 U.S.C. 2302(b); <u>Elion v. Jackson</u>, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 61).

<u>See</u> Plaintiff's Proposed Non-Standard Closing Instruction "Business Judgment."

## Objections to Defendant's Proposed Special Instruction No. 4

Pre-Selection: All of this proposed instruction, excepted as noted below, is duplicative of the three "Business Judgment" instructions that defendant proposed in its Specialized Instruction Nos. 1 and 2.  Defendant's proposed special instruction about an employer's business decisions is argumentative and erroneous.  A jury may infer, but does not to infer, that defendant discriminated against Ms. Makray by having misjudged her qualifications although with nothing more, this does not provide a basis for finding for Ms. Makray.  A jury may also infer discrimination from defendant's asserted reliance on subjective interview results and deviations from standard Office of Audit HR practices and policies in the selection process.  Defendant misstates the undisputed record in claiming that it "made the decision on the candidates' performance during the interviews that were conducted for the position."  Defendant's proposed instruction also impermissibly suggests that defendant's prior history of discrimination against women is irrelevant and erroneously implies defendant cannot be found liable unless Mr. Raponi engaged in discrimination against Ms. Makray.  Further, federal agencies are prohibited from engaging in pre-selection under the Civil Service Reform Act

Defendant's proposed instruction duplicate an earlier improper and argumentative instruction by using the terms "pretext"" and "a masking" and impermissibly instructs the jury that Ms. Makray must prove that its reasons for not selecting her were "phony."  .

Source:  Staub v. Proctor Hosp., 131 S. Ct. 1186, 1192 (2011); United States Postal Service v. Aikens, 460 U.S. 711, 716 (1983); Burdine v. Texas Dept. of Community Affairs, 450 U.S. 248, 259 (2000); Aka v. Washington Hospital Center, 156 F.3d 1284, 1298 (D.C. Cir. 1998) (en banc); Ponce v. Billington, 679 F.3d 840, 845-47 (D.C. Cir. 2012); Fishbach v. District of Columbia Dept. of Corrections, 86 F.3d 1180, 1183-84 (D.C. Cir. 1996); Griffin v. Washington Convention Ctr., 142 F.3d 1308, 1312 (D.C. Cir. 1998); 5 U.S.C. §2302(b)(12)) (incorporating 5 U.S.C. §2301(b); Special Counsel v. Lee and Beatrez, 114 M.S.P.R. 57 (2010); Elion v. Jackson, Jury Instructions C.A. No. 05-0992 (D.D.C.) (PLF) (ECF #108 at 61).

See Plaintiff's Proposed Non-Standard Closing Instruction "Business Judgment" and Standard Opening Instruction "Judicial Notice."

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **LAURA J. MAKRAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civ. Action No. 12-0520 (BAH)** |
| | ) | |
| **THOMAS E. PEREZ,** | ) | |
| **Secretary Of Labor,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF'S PROPOSED VERDICT FORM**

WE, THE JURY HAVING BEEN DULY EMPANELLED AND SWORN UPON OUR OATH, DO HEREBY RENDER THE FOLLOWING VERDICTS:

**1.)**     **Did Ms. Makray prove by a preponderance of the evidence that defendant discriminated against her because of her sex (female) when defendant did not select her as Director of OAQA in January of 2011 and instead selected Melvin Reid.**

**If you answered "YES" to Question 1, proceed to Question 2.**
**If you answered "NO" to Question 1, proceed to the final page of this Verdict Form.**

2.)     **How much do you award Ms. Makray in compensatory damages?**


$ _____   _____


**When you answer this Question, proceed to the final page of this Verdict Form.**

**This is the conclusion of the Verdict Form.  The Foreperson of the jury should sign and date this Verdict Form and return it to the Deputy Marshal.**


_____          _____

**Signature of Foreperson**                              **Date**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LAURA J. MAKRAY, | ) | |
| 12617 Brunswick Drive | ) | |
| Bowie, MD 20715, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1-12-cv-00520 (BAH) |
| | ) | |
| THOMAS E. PEREZ | ) | VERDICT FORM |
| Secretary of Labor | ) | |
| 200 Constitution Avenue, N.W., | ) | |
| Washington, DC 20210 | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S PROPOSED VERDICT FORM

### BERYL A. HOWELL, UNITED STATES DISTRICT JUDGE

1. Has the Plaintiff, Laura Makray, proven, by a preponderance of the evidence, that but for intentional gender discrimination Ms. Makray would have been selected for the position of Director of the Office of Audit Quality Assurance?

_____No _____Yes

PROCEED TO QUESTION 2 ONLY IF YOU ANSWERED "YES" TO QUESTION 1.

2. What sum of money do you find would reasonably compensate Plaintiff Makray for any compensatory damages suffered as a result of Defendant's discrimination?

$ _____

This is our unanimous verdict.


_____      _____ _____

Date                    Jury Foreperson




                    _____
                    FOREPERSON