**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LAURA J. MAKRAY,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**THOMAS E. PEREZ,** )<br>**Secretary Of Labor,** )<br>)<br>**Defendant.** )<br>)  | Civ. Action No. 12-0520 (BAH) |

## PLAINTIFF'S MOTION FOR AN AWARD OF EQUITABLE RELIEF

Plaintiff to the above action respectfully moves the Court, pursuant to Rule 7, Fed. R. Civ. P., to award her the those facets of equitable relief that remain in dispute between the parties and to issue a scheduling Order that will conclude the equitable relief phase of this case and set in motion the steps needed for the entry of a Judgment and final order, reserving as necessary defendant's right to appeal.

The full grounds in support of this Motion are explained in the accompanying Memorandum of Points and Authorities, to which the Court is respectfully referred. In accordance with the Stipulated Privacy Act and Protective Order approved by the Court on April 15, 2013 [ECF #13, ¶¶1, 8], the complete version of this Memorandum has been filed under seal and a redacted version filed on the public record, pending the Court's adjudication of Plaintiff's Motion to Unseal that is being filed contemporaneously.

A proposed Order has been submitted with this Motion, in accordance with LCvR 7(c).

Counsel for plaintiff has advised counsel for defendant of this Motion and has been given to understand that it is defendant's present intention to oppose it.

Respectfully submitted,

_____/s/_____
Robert C. Seldon, Esq.
 D.C. Bar No. 245100


_____/s/_____
Lauren Marsh Drabic, Esq.
 D.C. Bar No. 1011323
Seldon Bofinger & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C.  20004
(202) 393-8200
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURA J. MAKRAY, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
|        v. ) | Civ. Action No. 12-0520 (BAH) |
| ) | |
| THOMAS E. PEREZ, ) | |
|  Secretary Of Labor, ) | |
| ) | |
|    Defendant. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF EQUITABLE RELIEF**

**PRELIMINARY STATEMENT**

Several long-standing principles of law guide a District Court in awarding equitable relief to a plaintiff who has prevailed in litigation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(g)(1). The first is the most important. In the words of the Supreme Court:

> 'In dealing with [sec. 2000e-5(g)(1)] the courts have stressed that the scope of relief under that section of the Act is intended to make the victims of unlawful discrimination whole, and that the attainment of this objective rests not only upon the elimination of the particular unlawful employment practice complained of, but also requires that *persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination.*'

Albemarle Paper Co. v. Moody, 422 U.S. 405, 419-20 (1975) (quoting 118 Cong. Rec. 7168 (1972) (emphasis supplied); accord Franks v. Bowman Transportation Co., 424 U.S. 747, 763 (1976)). "The 'make whole' purpose of Title VII is made evident by the legislative history." Albemarle, 422 U.S. at 419.

1

Next, where "allegations of intentional discrimination" have been proven under the pretext methodology, "the district court must . . . follow the jury's factual findings . . . when later ruling on claims for equitable relief." Fogg v. Ashcroft, 254 F.3d 103, 110 (D.C. Cir. 2001). In other words, a defendant who has lost a case of discrimination at the liability phase cannot contest a prevailing plaintiff's entitlement to equitable relief if doing so would mean re-visiting the jury's verdict. That is proscribed by the Seventh Amendment's prohibition on re-litigating jury verdicts in subsequent, equitable proceedings, and basic tenets of collateral estoppel. E.g., Montana v. United States, 440 U.S. 147, 153 (1979); Dairy Queen v. Wood, 369 U.S. 469 (1962); Beacon Theatres v. Westover, 359 U.S. 500, 510-11 (1959). For that reason, backpay flows automatically "as a matter of course" when a jury's finding of discrimination is inevitably tied to a loss of salary. Albemarle, 422 U.S. at 420.[1]

The final principle is the most fundamental of the three and derived from a doctrine over 150 years old. Addressing the extent of a District Court's equitable powers in the context of post-trial proceedings, the Supreme Court expressly recognized that: "Congress took care to arm the courts with full equitable powers" to fulfill Title VII's "historic purpose to 'secur[e] complete justice.'" Albemarle, 422 U.S. at 418 (quoting Brown v. Swann, 10 Pet. 497, 503 (1836) and citing Porter v. Warner Holding Co., 328 U.S. 395, 397-98 (1946)). "[B]road equitable discretion" has been "vested" in the federal courts" to remedy discrimination. Bowman Transportation Co., 424 U.S. at 476.

The relief plaintiff seeks is well within the bounds of the Court's discretion. This Motion is necessary because even after repeated exchanges since the jury rendered its verdict, defendant has not matched the pace of Ms. Makray's within grade increases to Mr. Reid's; prepared accurate,

---

[1] Backpay, like all monetary relief other than compensatory damages, is an equitable remedy under Title VII. See Pollard v. E.I. DuPont DeNemours & Co., 532 U.S. 843, 848-50 (2001); Martini v. Federal National Mortgage Ass'n, 178 F.3d 1336, 1348 (D.C. Cir. 1999); 42 U.S.C. 2000e-16 (incorporating by reference 42 U.S.C. §1981a(b)(2)).

corrected SF 50's to effect her promotion and step increases retroactively; restored the leave plaintiff necessarily took to participate in this action; or waited the short period of time until plaintiff formally becomes the Director of OAQA before making changes to that office's senior personnel.  Accordingly, plaintiff respectfully moves the Court to award her these elements of equitable relief that are contested and to issue a scheduling Order to put the steps in motion for entry of a final order that will include all elements of equitable relief[2], incorporate the jury's award of damages, finalize the final award of attorneys' fees and costs, and set a date for the submission of any post-trial motions by defendant.[3]

---

[2]   The parties' Joint Report to the Court [ECF #91] and documents reflected the parties' agreement, after extended discussions, on aspects and calculations of financial benefits for Ms. Makray over and above the disputed elements of equitable relief that are the subjects of this Motion.  These matters include:
   a. Pre-judgment interest on Ms. Makray's backpay award will be compounded daily at the rate provided by the Backpay Act, 5 U.S.C. §5596.  ECF #91 at 3.  Post-judgment interest will be paid at the Treasury One Year Constant Maturity rate as specified at http://www.dcd.uscourts.gov/dcd/post.
   b. Additional contributions to Ms. Makray's Thrift Savings Account will be calculated by the Thrift Savings Board in accordance with the "breakage regulations" in 5 C.F.R. §1605. ECF #91 at 3.  They will be based on Ms. Makray's and/or defendant's calculation prior to January of 2011.
   c. No Social Security taxes will be deducted from Ms. Makray's backpay award, because her salary exceeded the limit each year from 2011 forward.
   d. Ms. Makray's performance-based bonuses since January of 2011 will be recalculated based on the assumption that she would have received Exemplary ratings at the GS-15 level as she received as a GS-14.  ECF #91 at 3.  The total differential in the bonus amounts due Ms. Makray is $10,343.08 plus interest.

[3]  Counsel for plaintiff has been advised that the undisputed award of attorneys' fees and costs pendente lite based on the Laffey matrix through March 10, 2015, is now being processed.  The remaining issues pertaining to an award of attorneys' fees and costs are the Court's disposition of Plaintiff's Motion for a Partial Award at the Salazar/LSI Rate [EFC #85] and an award of attorneys' fees incurred after March 10, 2015, either by stipulation or Court Order.

# ARGUMENT

## THE COURT MUST ISSUE AN ORDER
## TO ENSURE THAT PLAINTIFF IS PLACED IN THE POSITION
## SHE WOULD HAVE OCCUPIED IN THE ABSENCE OF DISCRIMINATION
## AND SET A SCHEDULE TO COMPLETE THIS CASE

### I.   Ms. Makray's Anniversary Date For Future Step Increases Is After Mr. Reid's.

Payment of backpay and retroactive promotions for federal employees who prevail under Title VII can only be effected by reconstructing their Official Personnel Folders and creating new SF-50's. Exh. 1, OPM Guide to Processing Personnel Actions, Ch. 3, Sub-ch. 2-2.a., 2-4.b. Ms. Makray's original Report to the Court of March 30, 2015, reported that she had been bringing issues about payment of backpay and discrepancies in defendant's backpay calculations to defendant's attention since the trial concluded. ECF #74 at 2.[4] These issues were still unresolved by the time the parties filed a Joint Report on April 10, 2015. ECF #76 at 2.

In the parties' next Joint Report on May 18, 2015, Ms. Makray again reported that she had "provided defendant with documentation showing that the date defendant selected to commence her retroactive promotion was" leaving her behind Mr. Reid in terms of within grade increases (worth approximately $3,000.00 to $4,000.00 per year)." ECF #91 at 3. When the Report was filed, Ms. Makray was still "awaiting a response from defendant whether it will equalize her backpay and step increases with Mr. Reid's." Id. Plaintiff made several demands that defendant provide copies of SF 50's from Mr. Reid's Official Personnel File, the official records that would document his official personnel actions, but defendant had refused to provide them by the time the Joint Report was filed.

---

[4] Plaintiff also reported that "defendant's failure to focus on specific issues raised by plaintiff either in a timely fashion or at all may mean that some of these issues will have to be adjudicated by the Court." ECF #74 at 2.

Defendant provided Mr. Reid's SF-50's only after the Court put a schedule in place to brief remaining issues of equitable relief. Exh. 2.[5] *The documents from Mr. Reid's OPF show that defendant has accelerated the anniversary date for his step increases to several months before he was selected for the position of Director of OAQA*.[6] Att. A-E; Exh. 3. Ms. Makray's anniversary date for step increases, on the other hand, is tied to the date of her retroactive promotion on January 16, 2011. This is having the effect of not paying Ms. Makray backpay to make up for the full differential in their salaries retroactively, and going forward leaving the anniversary date for her within grade increases several months behind his.[7] Furthermore, the "corrected" SF 50 defendant issued to Ms. Makray – the only official personnel document defendant has issued – has Ms. Makray's within grade increase to GS-15 Step 4 taking place over a year after Mr. Reid's. All of this is contrary to the most basic principle underlying an award of equitable relief to Ms. Makray which is to make her whole. E.g., Albemarle, 422 U.S. at 421.[8]

### A. Ms. Makray Is Receiving Retroactive Step Increases After Mr. Reid.

The reconstruction of Ms. Makray's OPF, Grade and Step levels, and salaries entails issuing new SF-50's that must reflect that the effective date of her promotion to Director of OAQA at the GS-15 Step 1 level occurred on the same day as Mr. Reid's promotion. E.g., Albemarle, 422 U.S. at 421; Exh. 1, Ch. 3, Sub-ch. 2-2.a., 2-4.b. At least through trial, defendant uniformly stated that Mr. Reid was promoted in January of 2011. E.g., Jt. P/T St. [ECF #50] at 3. The worksheet setting the pay for Mr. Reid's promotion to GS-15 Step 1 pinned the effective date to January 16, 2011. Att. A. Assuming this to be the correct date meant that going forward, January

---

[5] At defendant's insistence, Mr. Reid's SF 50's and related documents have been filed under seal in accordance with the Stipulated Privacy Act and Protective Order of April 15, 2013 [ECF #15] as Attachments A through E.

[6] Mr. Reid's abysmal service as acting Director was amply demonstrated at trial. Trial Exh. 9B.

[7] Step increases at the GS-15 grade level are upwards of $4,000.00 per year. Exh. 6.

[8] Defendant's calculation of Ms. Makray's start date for pay at GS-15 Step 4 also seems to contain a mathematical miscalculation to be corrected regardless of these fundamental errors.

5

16th would be the anniversary date for both to receive within grade increases. Ms. Makray's OPF would need to be corrected retroactively so she would become a GS-15 Step 2 on the first pay period beginning on January 16, 2012; a within grade increase to GS-15 Step 3 on January 16, 2013; and a GS-15 Step 4 on January 16, 2014. At that point, the interval between Steps increased from one year to two years, and Ms. Makray would be eligible for GS-15 Step 5 on January 16, 2016. Exh. 4.[9]

Using January 16th, the effective date for Ms. Makray's promotion in grade, as the anniversary date for her future step increases was, however, based on the assumption that this mirrored defendant's treatment of Mr. Reid. In fact, the last several years of SF 50's from Mr. Reid's OPF that defendant just produced show something quite different. Mr. Reid was given his first "yearly" within grade increase in November of 2011, only ten months after his initial promotion, and that became his anniversary date for within-grade increases going forward. Att. B. Mr. Reid was given another step increase to GS-15 Step 3 effective November 18, 2012. Att. D. He became a GS-15 Step 4 on November 11, 2013. Att. E. In other words, Mr. Reid is receiving within grade increases worth approximately $4,000.00 per year before the agency will be giving them to Ms. Makray and will continue to do so into the future.

**B. Unless Defendant's "Corrected" SF 50 For Ms. Makray Is Changed, Going Forward, Mr. Reid Will Be Over A Year Ahead Of Ms. Makray.**

Failing to equalize Ms. Makray's total backpay as Director of OAQA with Mr. Reid's and giving him step increases sooner than Ms. Makray two years after learning at Mr. Reid's deposition that he falsified his resume in becoming OAQA Director is bad enough. Exh. 5. But according to the only "corrected" SF-50 defendant prepared for Ms. Makray, starting in November of this year,

---

[9] The following Section of this Memorandum shows that defendant seems to have pushed the date for Ms. Makray to become eligible for this within grade increase back to February of 2017.

he will be paid over $4,000.00 a year more than Ms. Makray until February of 2017. The reason this will happen is because according to Ms. Makray's official "corrected" SF-50, she became a GS-15 Step 4 in February of this year rather than last year, which is the correct year. Exh. 3. With nothing more than fully satisfactory performance, Mr. Reid will become a GS-15 Step 5 in November of this year, two years after his last within grade increase. Exh. 4. Ms. Makray's two year waiting period, by contrast, will not run until February of 2017.

### C. Defendant Has Apparently Miscalculated Ms. Makray's Backpay.

The parties' post-trial exchanges show that the effective date of Ms. Makray's promotion to GS-15 Step 1 should be January 16, 2011.[10] Att. A. However, it appears that the date defendant is using to calculate Ms. Makray's backpay is February 13, 2011. Exh. 3. The federal government pays its employees in 26 bi-weekly pay periods, which means that the difference in defendant's calculation of the effective date of Ms. Makray's promotion is having the effect of delaying one or more of her step increases by one or two pay periods.[11]

### II. Defendant Has Substantially Altered The Make-Up Of OAQA

From the moment the jury rendered its verdict, defendant was on notice that Ms. Makray was poised to replace Mr. Reid as Director of OAQA. Lander v. Lujan, 888 F.2d 153, 157 (D.C. Cir. 1989) ("Examination of precedent under the counterpart sections of the National Labor Relations Act … on which section [Title VII] was 'expressly modeled,' reveals a legislative intent to include bumping in the district court's remedial arsenal" (quoting Albemarle, 422 U.S. at 419 & n.11). Plaintiff's original Report to the Court on March 30, 2015, specifically noted that defendant

---

[10] This is assuming that the mistake cited in Section I.B is corrected.

[11] Ms. Makray is also entitled to have her time off award for Exemplary performance appraisal in 2013 equalized with what she would have been entitled to as a GS-13. That year, she received a 4 day (32 hour) time off award, which was the award given to GS-14 nonsupervisory staff who received an Exemplary rating. Makray Decl., ¶¶ 18-19. The time off award for an exemplary rating for GS-15 supervisory staff in 2013 was 5 days (40 hours). Thus, she is entitled to an additional 8-hour time off award.

had not responded to plaintiff's demand to replace Mr. Reid and that its offer to create a new non-supervisory position for Ms. Makray was not acceptable. ECF #74 at 3. The parties conferred about Ms. Makray assuming the Directorship and agreement was reached for her to do so in mid-April. ECF #84.

Even by that time, defendant had not agreed on a date for Ms. Makray's assignment to the Directorship, to reassign Mr. Reid out of OAQA, or demote Mr. Reid if it was going to leave him assigned to OAQA. That only came about on May 18, 2015, under threat of a motion to for relief pendente lite. ECF #91 at 2, 4. The issue that still divided the parties was defendant's assignment of new senior auditors to OAQA without consulting with Ms. Makray and according her the prerogatives of selecting official for upcoming personnel changes in OAQA.

As Director of OAQA, Ms. Makray would have been the selecting official for all new hires and reassignments into that office because they would have been below GS-15, her grade. Makray Decl., ¶ 11. She would not have selected either of the two senior auditors who defendant apparently placed or were about to place in OAQA just before defendant agreed to make her Director. Makray Decl., ¶ 8. Ms. Makray knows from personal experience that both of these employees are less than satisfactory performers that she would not have selected. One was promoted without competition and reassigned to OAQA without a vacant position. Makray Decl., ¶¶ 3, 5. The other employee was reassigned out of OAQA several years ago and, apparently, reassigned back into the office despite the lack of a vacant position in OAQA. Makray Decl., ¶ 7. Neither would have wound up in OAQA had Ms. Makray been officially in charge of the office.

To be clear, Ms. Makray fully understands that four years elapsed between being passed over as Director until the jury rendered its verdict. She is not seeking to have all of defendant's personnel or managerial decisions in that time period re-visited. These recent personnel changes

stand on a different footing. Defendant undertook them at a time when the parties were engaged in negotiations over Ms. Makray's reassignment as Director of OAQA, something that surely would have happened in far less time and without needing to threaten litigation if defendant had simply transferred Mr. Reid out of OAQA promptly instead of waiting months. During that time, Ms. Makray was conferring with the agency in good faith, while defendant was planning changes to OAQA without consulting with Ms. Makray knowing that in short order she was going to be placed in charge of the office. This is a circumstance that warrants the Court exercising its broad equitable powers and ensuring that Ms. Makray is placed into the positon she would have been in right after the jury reached a verdict in her favor. Albemarle, 422 U.S. at 418, 421.

### III. Ms. Makray Is Entitled To The Restoration Of Leave She Needed To Use To Pursue This Action.

Although clients invariably play actives role in the litigation of their cases, unlike federal employees who are given unlimited time when asked to assist in the defense of their agencies, plaintiffs in employment cases are not given that luxury. This translates to meaning that many "a plaintiff like this one, who depends upon [her] salary, and who may face substantial hardship if forced to use annual leave when [s]he must be preparing for litigation, may well face a choice between [her] livelihood and [her] lawsuit." Mitchell v. Baldridge, 662 F. Supp. 907, 908-09 (D.D.C. 1987). Ms. Makray *accep*ted that choice knowing that one cost of pursuing this action if she did not prevail would be sacrificing a great deal of leave. Now that she has, she is entitled to restoration of the leave she needed to pursue her case administratively and in court:

> A successful Title VII plaintiff is entitled to reimbursement for vacation leave, or for unpaid leave, that was used in pre-trial activities . . . This includes reasonable time for attendance at depositions, meetings with counsel, other ordinary and legitimate pre-trial undertakings that require the presence of plaintiff, and attendance at trial.

9

Mitchell v. Baldridge, 662 F. Supp. 907, 908-09 (D.D.C. 1987); accord Kyles v. Secretary of Agriculture, 604 F. Supp. 426, 437, n.21 (1985). The parties' third Report showed that Ms. Makray has been raising the issue of restoring her leave balances for some time. ECF #91 at 4. Ms. Makray has not received a response from defendant about whether it will restore the 748 hours of leave she documented using during her case. Id.[12]

Ms. Makray's use of this leave was reasonable and properly documented. Makray Decl., ¶¶ 12-15 & Att. A. Proceeding on her own through the entire administrative process, she justifiably used 127 hours of time to research and file an extended informal complaint, prepare and file her formal complaint, and review the affidavits and documentation compiled in the Report of Investigation during the formal complaint process and decide whether to proceed farther. Makray Decl., ¶ 14 & Att. A. The discovery process included answering defendant's extensive written discovery, reviewing defendant's extensive e-discovery and printed discovery, being deposed, and preparing for and attending all of the depositions taken in the case; she used 292 hours of leave between assisting in filing her federal court complaint and during the discovery process. Id. Ms. Makray was also an active participant in the summary judgment process, including studying the entire record and assisting with the development of arguments to oppose defendant's motion and to support her opposition. Ms. Makray used 163 hours of leave in those endeavors. Id. In preparing for trial, and then for several days after it concluded, Ms. Makray used 166 hours of leave. Id.

All but 104 of the hours Ms. Makray is seeking to have restored were taken as annual leave, credit hours, comp time, and a time off award. Makray Decl., ¶ 15 & Att. A. These remaining

---

[12] Without prompting, defendant did place Ms. Makray on paid administrative leave for the trial and she used none of her own leave from February 9, 2015, through February 20, 2015. Makray Decl., ¶ 14 & Att. A.

hours were taken as sick leave in between May 13, 2013 and June 21, 2013.[13] Makray Decl., ¶ 15 & Att. A. During that time, Ms. Makray was recovering from surgery on her shoulder and under a physician's care and instructions. The physical limitations that recovery placed on Ms. Makray made it impossible for her to perform her job at the Office of Inspector General. This was during a critical time during her case, as written and electronic discovery were wrapping up and she was needed to assist her counsel in preparing for depositions that were conducted from late June through early July. Makray Decl., ¶¶ 15-16. Ms. Makray was able to assist in the prosecution of her case at her counsel's office at the times she felt able. Makray Decl., ¶¶ 15-16 & Att. A. However, doing so deprived Ms. Makray of the full benefit of her sick leave and took a toll on Ms. Makray's health; it set back her recovery and forced her to use a greater amount of sick leave than she otherwise would have. Makray Decl., ¶¶ 15-17. If Ms. Makray had used her annual leave during this period, she would have been entitled to its restoration and used less sick leave. Restoring the additional sick leave that Ms. Makray had to use will put her in the same place. Makray Decl., ¶¶ 15-17 & Att. A.

**IV.     A Schedule Must Be Put In Place To Conclude This Case.**

Plaintiff's individual Status Report and the parties' two Joint Status Reports clearly show that the completion of this case is taking longer than necessary. The Court expressed its intention at the conclusion of trial to have the equitable phase of this case concluded promptly and that is not happening. In all likelihood, the Court can infer from the parties' three Reports which one has been cause of this delay.

In order to ensure that this case is concluded without further delay, plaintiff respectfully requests that the Court set the following schedule. First, to complete the equitable relief phase of

---

[13] Ms. Makray took a total of 232 hours of sick leave during this time period. She is only asking for the restoration of the 104 hours of this time that she specifically spent working on her case.

this case, plaintiff respectfully moves to Court to order defendant to present a comprehensive stipulation to plaintiff's counsel specifying and calculating every aspect of equitable relief that plaintiff is entitled to receive within five days of the adjudication of this Motion. Five days later, defendant will file a stipulation with plaintiff's concurrence concluding all proceedings on equitable relief, including certifying to the Court that all of plaintiff's official personnel records have been corrected and updated and that the backpay she is owed has been processed for payment.

Simultaneously, the parties will file a final Joint Report identifying any issues that remain for the Court's consideration before a final order can be issued; updating the Court on the status of an award of attorneys' fees and costs; and including a statement by defendant whether it intends to seek to remit the jury's award of compensatory damages[14] or file any other post-trial motion under Rule 50, Fed. R. Civ. P. Ten days later, defendant will either file all post-trial motions or, after conferring with plaintiff's counsel, present the Court with a proposed Judgment and final order, if necessary reserving defendant's right to appeal.

---

[14] In the parties Joint Report of April 10, 2015, defendant stated that it did not anticipate seeking to remit the jury's verdict. ECF #76 at 2.

## **CONCLUSION**

For the foregoing reasons, plaintiff respectfully requests that the Court grant her the equitable relief that is sought in this Motion and set a schedule for the conclusion of this case.

Respectfully submitted,

_____/s/_____
Robert C. Seldon, Esq.
 D.C. Bar No. 245100

_____/s/_____
Lauren Marsh Drabic, Esq.
 D.C. Bar No. 1011323
Seldon Bofinger & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C.  20004
(202) 393-8200
Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 5th day of June, 2015, a copy of the foregoing sealed Memorandum of Points and Authorities in Support of Plaintiff's Motion for an Award of Equitable Relief, and accompanying Sealed Attachments A through E, were served via electronic mail upon:

AUSA Benton Peterson
501 3rd Street, NW, Fourth Floor
Washington, DC 20001

                                                                  _____/s/_____
                                                                     Lauren M. Drabic